In the Supreme Court of Georgia

Decided: February 1, 2016

S15A1584.  HOWARD v. THE STATE.

BENHAM, Justice.

Appellant Stanley Howard appeals his convictions for malice murder and other charges arising out of the shooting death of Damien Wright.[1]  For the reasons set forth herein, we affirm.

1.  Howard first challenges the sufficiency of the evidence to support his convictions.  Viewed in the light most favorable to the verdict, the record shows that on the evening of August 5, 2007, Howard, along with Lebaron Douse and at least three other men, were sitting outside Douse's house drinking alcohol and talking. At this time, Howard was living at Douse's house.  They heard gunshots

<hr/>

[1] The crimes occurred on August 5, 2007.  On September 24, 2009, a Burke County grand jury returned an indictment charging appellant with (Count 1) malice murder; (Count 2) felony murder (aggravated assault); (Count 3) possession of a firearm during the commission of a crime; and (Count 4) possession of a firearm by a convicted felon.  Appellant was tried February 7-8, 2011, and the jury returned a verdict of guilty on Counts 1, 2, and 3.  A judgment of nolle prosequi was entered on Count 4.  The felony murder conviction was vacated as a matter of law, and the trial judge sentenced appellant to imprisonment for life for the malice murder conviction and imprisonment for a term of five years to serve consecutively for the possession of a firearm conviction.  On February 10, 2011, appellant filed a motion for new trial, which was later amended.  Following an evidentiary hearing, the trial court denied the motion for new trial by order entered March 21, 2014.  Appellant filed a timely notice of appeal.  The case was docketed in this Court to the September 2015 term for a decision to be made on the briefs.

coming from down the street that seemed to be getting nearer to the group's location. The men saw 16-year-old Wright walking toward them waving a pistol in the air. When Wright arrived in front of Douse's house, Howard retrieved an AK-47 rifle from the trunk of his car and approached Wright. The two stood near the end of the driveway and exchanged fighting words. Howard told Wright to leave and demanded that Wright surrender his weapon, but he refused to do so.

The testimony about what occurred from that point forward was conflicting. According to witness Cortavious Johnson,[2] who was a friend of Wright, Howard was the first to point his weapon. Another witness, Terrence Berrien, who was related to Douse and described Howard as a family friend, testified Wright was the first to point his weapon. Witness LeGregory West, who was also related to Douse, testified that Wright fired the first shot, after which Howard returned fire, but, at trial, the other three witnesses denied seeing who fired first. Johnson admitted, however, that he had previously told

_____

[2] Johnson's testimony that he was present and observed the events in question was disputed by Douse, witness LeGregory West, and witness Terrence Berrien, who testified they did not see Johnson at the scene. Also, the jury learned that Johnson was a convicted felon. The credibility of witnesses, however, is an issue for the jury. See *Thompson v. State*, 286 Ga. 891, 892 (1) (692 SE2d 384) (2010).

investigators that Howard fired first. Douse and Berrien testified they heard one small "pow," apparently from Wright's pistol, followed by a quick succession of three louder shots, apparently from Howard's rifle. Additionally, Douse testified he heard Howard say "ouch" and Berrien saw Howard gesture as if his hand had been hit after the first softer-sounding shot was fired and before they heard the remaining three shots.

Howard does not deny that Wright was killed by gunshots he fired from his rifle, and in fact three 7.62 caliber shell casings, consistent with the type of bullet that would be fired from an AK-47, were found directly across the driveway from a pool of blood where the victim fell. In testimony that appears to corroborate that Wright also fired his weapon, a GBI agent who investigated the crime scene testified that marks on the door and door frame of a room located at the back of the carport indicated a bullet had been fired from a direction that a jury could have found was consistent with Wright's location at the time the weapons were fired. According to the medical examiner, blood test results showed Wright had a blood alcohol level of .112.

After the shooting, Howard entered his car and sped away, apparently taking the rifle with him. He avoided apprehension for nearly two years, when

3

he was pulled over by an officer for a traffic violation.

Howard asserts that the evidence establishes he acted in self-defense and was not guilty of either malice murder or felony murder. Indeed, a person may be justified "in threatening or using force against another when and to the extent that he . . . reasonably believes that such threat or force is necessary to defend himself . . . against such other's imminent use of unlawful force . . . ." OCGA § 16-3-21 (a). Subsection (b) of that code section, however, establishes that a person is not justified in using such force if he initially provokes the use of force against himself as an excuse to harm the assailant (OCGA § 16-3-21 (b) (1)) or if he "[w]as the aggressor or was engaged in a combat by agreement . . . ." OCGA § 16-3-21 (b) (3). We agree with Howard that, from the evidence summarized above, a jury could have found him not guilty of the murder charges on the ground that he was acting in self-defense. On the other hand, sufficient evidence was presented from which a reasonable trier of fact could reject this defense and find Howard was the aggressor in the confrontation.

To establish justification for killing another, "a defendant must show the circumstances were such as to excite the fears of a reasonable person that his safety was in danger." *Andrews v. State*, 267 Ga. 473, 474 (1) (480 SE2d 29)

(1997). It is for the jury to decide whether the circumstances were sufficient to justify the existence of such reasonable fear and to accept a defendant's claim of self-defense. See *Roper v. State*, 281 Ga. 878, 880 (1) (644 SE2d 120) (2007). A jury is free to reject a defendant's claim that he acted in self-defense. *White v. State*, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010). Here, no evidence was presented that Wright had directed a threat toward Howard or those in his party. In fact, testimony was presented that before Howard approached Wright at the end of the driveway, Wright had been speaking with some young women in front of Douse's house and had not pointed his weapon or behaved aggressively toward anyone. Accordingly, sufficient evidence was presented from which the jury could find Howard's actions were not justified in self-defense and that he was guilty of all charges.

2. Howard also asserts ineffective assistance of trial counsel in two particulars. First, he argues trial counsel was ineffective for failing to have blood, that was collected by the State from spatters found near the carport of the house but not tested by the State, tested to determine if the blood was a match to Howard. Counsel testified at the motion for new trial hearing that Howard showed him a mark on his hand where he claimed to have been struck by a

bullet fired by Wright during the confrontation. Counsel acknowledged that had the blood been tested and found to be Howard's such evidence would have strengthened the self-defense theory. Counsel also testified, however, that he made a strategic decision not to have the blood tested since if it was not a match such evidence could have been detrimental to Howard's self-defense claim. Instead, counsel's strategy was to argue that law enforcement had improperly failed to follow up on leads that might have exonerated Howard. In response, Howard argues that since the victim's body was located some distance away from the blood spatters, evidence was presented that he had been struck in the hand, and the blood spatters were found near the house where Howard had been sitting before the shooting, little or no chance existed that the blood in question came from anyone other than him. Thus, he argues, counsel's strategy was flawed and demonstrates deficient performance.

As Howard did not have the blood tested post-trial, however, he has not shown that this evidence would have been favorable to his defense and that a reasonable probability exists that the result of the trial would have been different. Thereby, even assuming without deciding that trial counsel's performance was deficient, Howard fails to demonstrate prejudice, one of the

6

required elements of establishing ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Mere speculation about what the evidence would have shown had it actually been obtained does not satisfy the requirement of showing prejudice. See *Whitus v. State*, 287 Ga. 248, 801, 805 (2) (700 SE2d 377) (2010); see also *Valentine v. State*, 293 Ga. 533, 537 (3) (748 SE2d 437) (2013).

Howard also argues his trial counsel provided ineffective assistance by failing to present evidence, in support of his justification defense, that the victim had a propensity for violence. Trial counsel testified at the motion for new trial hearing that, in hindsight, this was something he should have done. An attorney's performance, however, is not to be judged by the "distorting effects of hindsight." *Strickland*, supra, 466 U.S. at 689 (III) (A). Howard claims his counsel should have presented evidence that Berrien's cousin was involved in an incident with Wright a few weeks before the incident at issue in this case in which the cousin shot Wright, and that counsel should have investigated whether a tattoo on the victim's arm, as noted in the medical examiner's report, was gang-related. Citing *Graham v. State*, 274 Ga. 696 (558 SE2d 395) (2002), Howard claims this evidence would have been admissible to show the victim's

propensity for violence.

Even assuming the evidence created a prima facie case of justification, that Howard could have established the existence of the referenced prior violent acts by competent evidence, and that his counsel could have met the procedural requirements for presenting such evidence (see *Graham*, id. at (3)), again we conclude Howard has failed to demonstrate the required prejudice to establish ineffective assistance of counsel. In fact, trial counsel elicited testimony that the victim had been shot the previous month, and elicited testimony from the medical examiner that a healing wound noted in the victim's abdomen was consistent with surgical intervention to treat a gunshot wound. Douse testified that the victim was asked to leave the property on an earlier occasion when the victim was involved in an altercation with Douse's nephew, and reiterated that the victim had been at his house previously "instigating issues." Trial counsel presented no evidence at trial that the victim's tattoo was gang-related, but the possible meaning of the tattoo is at most speculative since Howard failed to show that he would have been able to establish a link between the tattoo and the victim's involvement with a gang. In any event, for purposes of establishing evidence of the victim's specific acts of violence against third parties in support

of a defendant's claim of justification, "[m]ere membership in a gang is not a specific act of violence." *Kolokouris v. State*, 271 Ga. 597, 599 (4) (523 SE2d 311) (1999). In summary, we reject Howard's assertion that he is entitled to a new trial because of ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.