305 Ga. 658
FINAL COPY

S19A0457.  COLEY v. THE STATE.

WARREN, Justice.

Christopher Lee Coley was convicted of malice murder in the shooting death of John Adams.  On appeal, Coley contends that the evidence was insufficient to support his conviction; that the trial court erred in denying his motion for a mistrial, in charging the jury on party to a crime, and in allowing the alternate juror to sit in the jury room during deliberations; and that his trial counsel was ineffective.  Finding no error, we affirm.[1]

1.     Viewed in the light most favorable to the jury's verdict,

---

[1] The murder was committed around midnight on September 21, 2006. On December 4, 2006, a Pulaski County grand jury indicted Coley for a single count of malice murder.  At the conclusion of a trial held from December 11-12, 2007, a jury found Coley guilty of malice murder.  On December 12, 2007, the trial court sentenced Coley to life in prison.  Coley filed a timely motion for new trial on January 4, 2008, which was later amended through new counsel on December 22, 2015.  Following a December 20, 2016 hearing, the trial court denied the motion, as amended, on August 27, 2018.  Coley filed a timely notice of appeal on August 30, 2018.  The appeal was docketed in this Court to the term beginning in December 2018 and submitted for a decision on the briefs.

the evidence presented at trial showed the following.  On September 21, 2006, Coley and Marcus Lawson, who are cousins, spent much of the day together.  At one point that night, Coley showed Lawson a loaded chrome and black gun.  Shortly after that, Coley and Lawson bought some marijuana and walked to a store to buy a cigar to use for smoking the marijuana.  The two were wearing dark clothing — Lawson in a black and silver shirt, black pants, and black shoes, and Coley in a black shirt and blue jeans — and bandanas, and Coley also had a black t-shirt on his head.  Lawson later testified that as they were walking to the store around midnight, Coley saw someone coming toward them, so Coley and Lawson got off the street and hid in some bushes as they waited for the person to pass.  The person approaching was Adams.

Lawson testified that Adams turned around and started walking in the opposite direction, and that Coley then ran up behind him, prompting Adams to turn back around.  According to Lawson, Coley then pulled a gun.  Lawson testified that he looked away, then heard a gun cock and a shot.  Lawson testified that he started to

walk away, but that Coley ran up to him telling him to run; as they ran, Coley said that he had shot Adams.

After Coley and Lawson fled the scene, they first hid behind a nearby house for about 20 minutes. They left the gun there, along with the bandanas each of them wore and the black t-shirt that had been on Coley's head. From there, the two went to an abandoned house and hid until the next morning.

Lawson was arrested around noon the next day. He promptly began helping the police, voluntarily telling them that Coley was the shooter and leading them to the gun and clothes. He also helped them locate Coley, who was arrested later that same day. Coley initially told the police that he had no knowledge of the shooting, but later stated that Lawson had been the shooter.[2]

In addition to Lawson's testimony, other evidence was adduced

---

[2] He made that audio-recorded statement after being arrested and advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). (The record indicates that at the time Coley became a suspect in Adams's murder, Coley was already wanted for selling cocaine and for violating his probation, and that the police initially arrested him for those charges.).

at trial. Near the house that Coley and Lawson first hid behind, which Lawson led police to, investigators found two bandanas, a black t-shirt, and a handgun. The handgun was a match for the bullet that killed Adams. And the black t-shirt, which Lawson said Coley had on his head, had Coley's DNA on it. Coley also had a bloodstain on the jeans that he was wearing at the time of his arrest and which he admitted that he had been wearing at the time Adams was shot, though there was not enough blood on the jeans to generate a DNA profile. Additionally, in Coley's statement to police, he was able to describe details like what Adams had in his hands and the positioning of Adams's body as he fell, indicating to the agent interviewing Coley "that he was pretty close to the victim" at the time of the shooting. At trial, the medical examiner testified that Adams died from a contact gunshot to the head, which entered just below his left temple. And two witnesses who lived near the scene testified that they saw two people "wearing dark clothing" running through their yard around the time of the shooting, prompting them to call 911.

2.     Coley asserts that the evidence was insufficient to support his conviction.  Specifically, he asserts that the evidence was vague and conflicting and that the testimony of Lawson — who was Coley's accomplice — was uncorroborated.  Because there was at least slight evidence corroborating Lawson's accomplice testimony, and because the evidence was otherwise sufficient to support Coley's conviction of malice murder, this enumeration fails.

In "felony cases where the only witness is an accomplice," the testimony of that single accomplice must be corroborated to sustain a conviction.  Former OCGA § 24-4-8; *Bradshaw v. State*, 296 Ga. 650, 653 (769 SE2d 892) (2015).[3]   "'[S]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged.'"

---

[3] This case was tried in 2007 under Georgia's old Evidence Code. We have already explained that the old and new Code provisions on accomplice corroboration (former OCGA § 24-4-8 and current OCGA § 24-14-8) have the same meaning, because the language of former OCGA § 24-4-8 is "virtually identical" to new Evidence Code provision OCGA § 24-14-8; there is no provision of the Federal Rules of Evidence governing accomplice testimony; and the General Assembly clarified that it intended to retain substantive Georgia evidence law unless displaced by the new Evidence Code. *Bradshaw*, 296 Ga. at 653-654.

*Bradshaw*, 296 Ga. at 654 (punctuation omitted) (quoting *Threatt v. State*, 293 Ga. 549, 551 (748 SE2d 400) (2013)). That said, the corroborating evidence must be

> independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

Id. at 655 (punctuation omitted) (quoting *Threatt*, 293 Ga. at 551).

Coley argues that he was merely present when the crime occurred. But there was more than slight, independent evidence corroborating Lawson's testimony that Coley was a participant in Adams's shooting. As an initial matter, Coley himself admitted to being at the murder scene, after first lying about his presence there. In addition, testing confirmed that the black t-shirt Lawson said that Coley wore on his head during the shooting had Coley's DNA on it, and officers found that t-shirt in close proximity to the murder

weapon. Moreover, two neighbors who lived near the location of the shooting called 911 after they saw two people in dark clothing running through their yard around the time of Adams's murder. Finally, the jeans that Coley was wearing when officers arrested him, and which he admitted that he was wearing at the time Adams was shot, had a bloodstain on them. This evidence corroborated Lawson's testimony that Coley was a participant in Adams's murder. See, e.g., *Raines v. State*, 304 Ga. 582, 588-589 (820 SE2d 679) (2018) (independent evidence — including defendant's own statement placing him at the scene and his description of the murder, despite claiming he was a mere bystander — sufficiently corroborated accomplice's testimony). Because there is sufficient evidence corroborating Lawson's accomplice testimony, Coley's enumeration of error fails in this regard.

Coley's argument about the general sufficiency of the evidence also fails. When evaluating a challenge to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the verdict and ask whether any rational trier of fact

could have found the defendant guilty beyond a reasonable doubt of the crime of which he was convicted. See *Jackson v. Virginia,* 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979). "'As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.'" *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) (citation and punctuation omitted).

Coley asserts that the evidence, which included Lawson's testimony that he witnessed Coley murder Adams and that he heard Coley admit to shooting Adams, was vague and conflicting. But our review "leaves to the jury the resolution of conflicts in the testimony, the weight of the evidence, the credibility of witnesses, and reasonable inferences" to be made from the evidence. *Menzies v. State,* 304 Ga. 156, 160 (816 SE2d 638) (2018). There was sufficient evidence to support Coley's conviction, so this enumeration of error fails.

3. Coley contends that the trial court erred in denying his motion for a mistrial after the State elicited testimony about Coley's

arrest for sale of cocaine and a probation violation, which Coley argues was inappropriate character evidence. As explained below, because Coley did not move for a mistrial at the time of the complained-of statement, he did not preserve this issue for appellate review.

Where a motion for mistrial is based on alleged bad-character evidence and is denied, that denial is reviewed for abuse of discretion. *Brewer v. State*, 301 Ga 819, 820 (804 SE2d 410) (2017). But if the defendant "did not make a contemporaneous motion for a mistrial" at the time the defendant became aware of the matter giving rise to the motion, then the defendant "has waived review of this issue on appeal." *Moore v. State*, 294 Ga. 450, 451 (754 SE2d 333) (2014); see also *Burrell v. State*, 301 Ga. 21, 26 (799 SE2d 181) (2017).

At Coley's trial, the statements at issue — which included references to the reason he was arrested in the first place — were made during the State's direct examination of GBI Special Agent Spencer Barron. During Special Agent Barron's direct examination,

the State asked what Coley was under arrest for when Special Agent Barron interviewed him, and Special Agent Barron replied, "[s]ale of cocaine and violation of probation," prompting Coley's counsel to object. At a sidebar conference, defense counsel argued that Special Agent Barron's testimony inappropriately placed Coley's character at issue; the State replied that the defense had opened the door to the testimony because it had elicited testimony from Lawson that Coley was "on the run," which begged an explanation of why Coley was fleeing. The trial court responded that "[f]or the time being, you don't need to go into it. We'll talk about that," and instructed the State to "stay away" from such testimony. Special Agent Barron's testimony continued without any further objection or motion from defense counsel about the issue. After another witness testified, a recess was taken for lunch, and before the jury returned to the courtroom after lunch, defense counsel moved for a mistrial. The court denied Coley's motion for a mistrial but said that it would give a "limiting" (curative) instruction. Defense counsel then objected, stating that "at this point in the trial, we would except to an

instruction if it's going to call attention to it to the jury." Counsel reasoned that "[h]ad it been done immediately, that would be one thing. But at this point, it's either sunk in their heads or they've forgotten about it. One or the other. Either way, it can only be a bad thing."

As we discuss below in Division 6 (a), counsel's objection to the court's offer to give a curative instruction at that point was not a patently unreasonable trial strategy. Nevertheless, because Coley's motion for a mistrial was not made contemporaneous with the testimony that he complained about, the issue of whether the court abused its discretion in denying Coley's later motion for mistrial is not properly before this Court for review. See, e.g., *Burrell*, 301 Ga. at 26 (allegation of error pertaining to mistrial not preserved because defendant did not move for mistrial based on witness outburst during direct examination until after completion of cross-examination); *Moore*, 294 Ga. at 451 (allegation of error pertaining to mistrial not preserved because defendant did not move for mistrial based on improper evidence of defendant's prior felony

conviction until after State rested); *Lowe v. State*, 287 Ga. 314, 315 (695 SE2d 623) (2010) (allegation of error pertaining to mistrial not preserved because defendant did not move for mistrial based on witness's testimony about alleged improper character evidence, despite a contemporaneous sustained objection, until after several other witnesses finished testifying).  This enumeration of error therefore fails.

4.    Coley argues that the trial court erred by charging the jury on party to a crime.  We disagree.

We note first that Coley properly preserved this issue for appellate review because he objected to a jury charge on party to a crime, not only at the charge conference but also after the court finished charging the jury.  Cf. *White v. State*, 291 Ga. 7, 8 (727 SE2d 109) (2012) ("[F]ailure to object to the charge as given precludes appellate review" unless there was plain error.).  "Every person concerned in the commission of a crime" — including a person who "[d]irectly commits the crime" or "[i]ntentionally aids or abets in the commission of the crime" — "is a party thereto and may be charged

with and convicted of commission of the crime." OCGA § 16-2-20 (a), (b) (1) and (3). "[M]ere presence or approval of a criminal act" is insufficient to render a person a party to a crime; shared criminal intent is required. *Coe v. State*, 293 Ga. 233, 235 (748 SE2d 824) (2013) (citation and punctuation omitted). Whether such intent exists is a jury question that may be inferred from a person's "presence, companionship, and conduct before, during, and after the crime." *Williams v. State*, 304 Ga. 658, 661 (821 SE2d 351) (2018) (citation and punctuation omitted). If slight evidence is produced at trial supporting the theory of party to a crime, then the trial court is authorized to instruct the jury on it. *Baptiste v. State*, 288 Ga. 653, 658-659 (706 SE2d 442) (2011).

Here, sufficient evidence supported the trial court's instruction on party to a crime. The evidence showed that Coley and Lawson were cousins who had spent most of the day together before Adams's murder, and that Coley had shown Lawson that Coley was carrying a loaded pistol that day. That night, when Coley noticed that someone else was walking down the street, Coley and Lawson

immediately got off the road and hid in the bushes together. And after Adams was shot and killed, Coley and Lawson fled the scene together, disposed of evidence together, and hid together in an abandoned house for the rest of the night. Perhaps most importantly, Coley claimed that *Lawson* was the shooter and that Coley was merely with Lawson when Lawson shot Adams. In light of Coley's statement, and because the evidence supported the court's instruction on party to a crime, this enumeration of error fails.

5. Coley contends that the trial court erred by allowing the alternate juror into the jury room during jury deliberations and that a new trial is therefore required. Because Coley agreed to the alternate juror's presence in the jury room during deliberations, however, any error in this respect is waived.

Under Georgia law, "[u]pon final submission of the case to the jury, the alternate jurors shall not retire with the jury of 12 for deliberation but may be discharged." OCGA § 15-12-171. If the trial court deems it advisable to keep one or more of the alternate jurors available, however, "it may direct that one or more of the alternate

jurors be kept in the custody of the sheriff or one or more court officers, separate and apart from the regular jurors, until the jury has agreed upon a verdict." Id. And although there is a rebuttable presumption of harm to the defendant if an alternate juror sits in on the jury's deliberations "over the defendant's objections," "any error is waived" if the defendant "agreed to the alternate juror's presence during deliberations." *Eller v. State*, 303 Ga. 373, 380 (811 SE2d 299) (2018) (citations and punctuation omitted).

Here, after the court instructed the jury and sent it into the jury room to begin deliberations, the court informed the parties that it was "thinking about sending the alternate in with them with instructions not to participate in any discussion." Defense counsel voiced some apprehension about the prospect and said, "I don't know," to which the court replied, "I don't have any feelings one way or the other." Defense counsel then conferred with Coley and afterward informed the court, "I've explained this to my client as best I could and he doesn't have any problem with [the alternate juror] sitting in there." The court stated, "I'm not going to do it over

objections," and defense counsel replied, "No. He doesn't and I don't think I'll have an objection to that either."

Because Coley ultimately agreed, without objection, to the alternate juror's presence in the jury room during deliberations, any error concerning a violation of OCGA § 15-12-171 is waived, and this enumeration therefore fails. As we emphasized in *Eller*, however, "[w]e should be clear . . . that the trial court's action was inappropriate, and we do not approve of permitting alternate jurors to be present during deliberations." 303 Ga. at 380.

6. Coley argues that his trial counsel was ineffective for three reasons: (a) counsel refused the court's offer of a curative instruction after Special Agent Barron testified about Coley's arrest for sale of cocaine and probation violation; (b) counsel failed to request that the firearm and magazine Coley allegedly used to murder Adams be fingerprinted; and (c) counsel failed to move to get a more representative jury. Because Coley has not established ineffectiveness as to any of these claims, this enumeration of error also fails.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) *Counsel's refusal of a curative instruction.* As discussed above, after Special Agent Barron testified that Coley had been arrested for sale of cocaine and a probation violation, Coley's counsel objected to the trial court's later offer to provide a curative instruction about that testimony to the jury. Coley's counsel stated that he objected to an instruction because it risked calling the jury's attention to Special Agent Barron's testimony, to Coley's detriment.

It is well established that "'trial tactics and strategy are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.'" *Brewer*, 301 Ga. at 821 (quoting *McNair v. State*, 296 Ga. 181, 184 (766 SE2d 45) (2014) (punctuation omitted)). Here, we conclude that the explanation provided by Coley's counsel for declining a curative instruction indicates that his decision was a

strategic one that was not patently unreasonable. See, e.g., *Brewer*, 301 Ga. at 821 (counsel's "strategic decision not to draw the jury's attention to the booking reference by declining a curative instruction was 'within the wide latitude of presumptively reasonable professional conduct engaged in by trial attorneys'" (quoting *Kitchens v. State*, 289 Ga. 242, 245 (710 SE2d 551) (2011)). Counsel was therefore not deficient, and this claim of ineffective assistance fails.

(b) *Counsel's failure to have the firearm and magazine tested for fingerprints.* At trial, the State entered into evidence the handgun and magazine that police had recovered during their investigation. Ballistic testing had confirmed that a cartridge casing found at the murder scene came from the handgun, but an agent testified that he did not have the firearm tested for fingerprints because based on his "knowledge, training and experience, obtaining a fingerprint from a firearm is extremely, extremely unlikely." Coley contends that because "[f]ingerprints have been an effective means of police investigation for decades," his

counsel should have had the firearm and magazine tested. He further contends that counsel's failure to test this evidence for fingerprints—which Coley says could have provided exonerating evidence—rendered counsel constitutionally ineffective. But Coley has presented no evidence that he has had the firearm or the magazine tested, and he therefore "has not shown that this evidence would have been favorable to his defense and that a reasonable probability exists that the result of the trial would have been different." *Howard v. State*, 298 Ga. 396, 399 (782 SE2d 255) (2016) (because defendant "did not have the blood tested post-trial," he "fail[ed] to demonstrate prejudice"); *Geiger v. State*, 295 Ga. 648, 653-654 (763 SE2d 453) (2014) (because defendant did not present any evidence "that additional testing of the shell casing would have produced evidence that would have been favorable to him at his trial . . . he cannot show prejudice from his counsel's failure to have the shell casing independently tested"). Indeed, "[m]ere speculation about what the evidence would have shown had it actually been obtained does not satisfy the requirement of showing prejudice."

*Howard*, 298 Ga. at 399. As a result, this claim of ineffective assistance also fails.

(c) *Counsel's failure to move for a more representative jury.* Finally, Coley "contends that his counsel did not move to get a more representative jury to hear his case." The record shows, however, that Coley's counsel did challenge, under *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), the State's peremptory strikes of four of six African-American jurors. The trial court rejected that challenge based on the State's explanation that three of those jurors were closely involved with or related to Coley, and that the other had a grandson who was under indictment and represented by the public defender's office, which also represented Coley. Coley now argues that the State's proffered reasons for striking those jurors were insufficient.

Our evaluation of this enumeration is complicated by the fact that the attorneys' individual voir dire of the jurors — which we presume normally would contain the information most relevant to Coley's claim for at least three of the four jurors — does not appear

in the record before us; indeed, it appears that it was not transcribed.[4] Coley does not argue that counsel was ineffective for failing to have those portions of voir dire transcribed, and he provides no evidence establishing a *Batson* violation or ineffectiveness of counsel in this regard. Cf. *Hunt v. State*, 288 Ga. 794, 798-799 (708 SE2d 357) (2011) (defendant failed to establish prejudice for ineffective assistance claim that counsel's failure to have voir dire transcribed precluded full review of alleged *Batson* violation because "[a] general unspecified hope of reversible error during voir dire will not secure a defendant another trial" (citation and punctuation omitted)); see also *Bester v. State*, 294 Ga. 195, 198 n.2 (751 SE2d 360) (2013) (noting that although defendant's "enumeration of error alleges that trial counsel was ineffective in failing to assert a *Batson* claim, the record shows that trial counsel did assert such a claim, and [defendant's] brief addresses the merits of his *Batson* claim without arguing it in the context of an ineffective

---

[4] During the general voir dire, there was a discussion with one of the jurors about some relation to Coley; that discussion was transcribed and appears in the record.

assistance of counsel claim"). Instead, his appellate brief offers only the unsupported argument that the State's "reason was not specific to each juror and only grouped all the jurors together as not suited," and that "this was not a satisfactory showing on the record" by the State "to satisfy the requirement of a *Batson* challenge."

Under these circumstances — where counsel challenged unsuccessfully the constitutionality of the State's strikes against four jurors, and where Coley has provided no evidence demonstrating how counsel performed deficiently in so doing — Coley has failed to carry his burden of demonstrating that his trial counsel was either deficient or that Coley was prejudiced by any alleged deficiency.

This enumeration of error also fails, and Coley's conviction is affirmed.

Judgment affirmed. All the Justices concur.

Decided April 15, 2019.

Murder. Pulaski Superior Court. Before Judge Kaufold.

Jonathan P. Waters, for appellant.

Timothy G. Vaughn, District Attorney, Gregory A. Oberry, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tina M. Piper, Rebecca J. Dobras, Meghan H. Hill, Assistant Attorneys General, Andrew A. Pinson, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General, for appellee.