307 Ga. 583
FINAL COPY

S20A0100.  DOZIER v. THE STATE.

BLACKWELL, Justice.

Jason Dozier was tried by a Gwinnett County jury and convicted of murder with malice aforethought, armed robbery, and other crimes in connection with a home invasion that led to the fatal shooting of Nicolas Jackson. Dozier appeals, claiming only that the evidence is legally insufficient to sustain his convictions. Upon our review of the record and briefs, we see no merit in this claim of error, and we affirm.[1]

---

[1] Jackson was killed in February 2012. A grand jury indicted Dozier and several co-defendants in April 2012, charging them with malice murder, murder in the commission of a felony, armed robbery, aggravated assault, burglary, and possession of a firearm during the commission of a felony. Dozier was tried by himself in October 2013, and a jury found him guilty on all counts. The trial court sentenced Dozier to imprisonment for life without the possibility of parole for malice murder, a consecutive term of imprisonment for life without the possibility of parole for armed robbery, and consecutive terms of imprisonment for years for aggravated assault (20 years), burglary (20 years), and possession of a firearm during the commission of a felony (5 years). The verdict as to felony murder was vacated by operation of law. Dozier filed a motion for new trial in October 2013, and he amended the motion in June 2018. In December 2018, the trial court denied the motion for new trial, but it set

Viewed in the light most favorable to the verdict, the evidence shows that Timothy Lamar Johnson assembled a crew to burglarize Jackson's house in February 2012.[2] According to Johnson,[3] he recruited Darrez Chandler, Eddie Green, Anthony Lumpkin, Reco West, Michael Davis, and Dozier to help with the burglary.[4] Early in the evening of February 2, the crew (with the exception of Chandler[5]) traveled in a silver van to Jackson's house. Along the way, Lumpkin

aside the sentence for aggravated assault and merged the aggravated assault with the malice murder. Dozier timely appealed, and this case was docketed to the term of this Court beginning in December 2019 and submitted for a decision on the briefs.

[2] Jackson's father was known to be a cocaine dealer, and Johnson and his crew apparently expected to recover a million dollars or more in cash from the residence.

[3] Johnson testified at trial pursuant to an agreement with the State. Also pursuant to that agreement, he pleaded guilty to armed robbery, aggravated assault, burglary, and possession of a firearm by a convicted felon. The court sentenced him to 15 years of imprisonment without the possibility of parole, followed by 10 years of probation.

[4] This Court already has affirmed the convictions and sentences of Davis and West for their parts in the murder and robbery of Jackson. See Davis v. State, 306 Ga. 764 (833 SE2d 109) (2019); West v. State, 305 Ga. 467 (826 SE2d 64) (2019).

[5] Chandler remained in a nearby parking lot in his Pontiac with instructions to stay on the phone and let the others know if the police came.

2

said that he was going to enter the house by "smash[ing]" the door, and Dozier replied, "I'm right behind you, bro."

Johnson said that, when they arrived, it appeared that the home was occupied, and Johnson urged the men not to proceed with the burglary at that time. But Lumpkin, West, Davis, and Dozier decided to proceed anyway. They exited the van and ran toward the house. Johnson remained in the van with Green. Lumpkin kicked down the basement door, and he, West, Davis, and Dozier went inside. Johnson heard shots from inside the house, and he called Dozier to find out what had happened. Eventually, Lumpkin, West, Davis, and Dozier fled the house and returned to the van. Several of them were carrying firearms, and Dozier was carrying a black laptop bag. Lumpkin told Johnson that they had shot someone inside the house.

Jackson's sister testified that, at the time of the home invasion, Jackson was in the basement playing video games, and she was in her room on the third floor watching television. She heard a noise downstairs, and she went downstairs in time to see (out the front

window of the house) a silver van with a driver and six passengers, including a man with a black laptop bag over his shoulder. She called 911, and she later discovered her brother in his room, which had been ransacked. Jackson had been shot and later died of his wounds.

Responding officers quickly located the silver van and stopped it, apprehending Johnson and his crew. The officers recovered four handguns inside or near the van, including a Kel-Tec .380-caliber handgun and a Jimenez nine-millimeter pistol. They also recovered a black laptop bag, which contained Jackson's laptop. The hands of each of the men in the van were tested for gunshot residue, and Lumpkin, West, Davis, and Dozier tested positive. On their way to jail, Johnson asked Dozier what happened, and Dozier admitted, "Man, [Lumpkin] shot and I shot." Dozier continued, "I had to shoot with him," but "I ain't killed that boy."

Forensic evidence collected at the scene included a shoe print, which matched the shoes Lumpkin was wearing, just outside the basement door. In addition, nine-millimeter and .380-caliber shell

4

casings were found inside and just outside Jackson's bedroom, and there were six bullet holes in his bedroom door. Several of these shell casings were linked to the Kel-Tec handgun, on the grip of which investigators found Dozier's DNA, and on the magazine of which they found his thumbprint. A bullet recovered from Jackson's body was determined to have been fired by the Jimenez pistol.

Other evidence presented at trial included cell phone records, which showed that Johnson attempted to call Dozier during the burglary. In addition, Jackson's mother testified that the stolen laptop was either upstairs on the third floor or downstairs in the basement near Jackson's room at the time of the burglary. And while Dozier was in jail, he placed a telephone call to his father in which he said that officers had tested his hands for gunshot residue and that he "did some shooting."

Dozier argues that the evidence was insufficient to sustain his conviction for armed robbery because the State failed to prove that he took the laptop "from the person or the immediate presence" of Jackson. OCGA § 16-8-41 (a). We disagree. Jackson's mother

5

testified that the laptop was either in the basement near Jackson's room or upstairs, and based on the testimony of Jackson's sister, the jury could have inferred that it was in the basement (because she only heard a noise downstairs, where the burglars entered the house and where Jackson's room was ransacked). Jackson was in the basement at the time — that is where he was shot — and the place from which the laptop was taken was under his control. This is sufficient to satisfy the immediate presence requirement for robbery. See Benton v. State, 305 Ga. 242, 244-245 (1) (b) (824 SE2d 322) (2019) (noting that "the victim's physical presence at the theft is not required for armed robbery if what was taken was under his control or his responsibility and if he was not too far distant") (citation and punctuation omitted).

Dozier also contends that the State did not prove beyond a reasonable doubt that he had the requisite intent necessary to sustain a conviction for malice murder. We disagree. The evidence shows that Dozier and Lumpkin knew that there were people inside the house when they entered, that they fired multiple shots through

6

the bedroom door, and that a bullet from Lumpkin's gun struck and ultimately killed Jackson. The men proceeded to ransack the room while Jackson lay dying. A rational trier of fact could have relied on this evidence to infer malice. See Jones v. State, 303 Ga. 496, 499 (813 SE2d 360) (2018) (malice may be inferred by conduct which demonstrates "such a reckless disregard for human life as to show an abandoned and malignant heart") (citation and punctuation omitted). Moreover, even though the bullet that killed Jackson came from Lumpkin's gun, and not Dozier's gun, there is ample evidence that Dozier shared Lumpkin's criminal intent with respect to Jackson, and so he properly could be convicted as a party to the crime of malice murder. See, e.g., Jackson v. State, 303 Ga. 487, 488-489 (1) (813 SE2d 372) (2018) ("Even where it is undisputed that the victim was shot by another person, every person concerned in the commission of the crime may be convicted of the crime.").

Accordingly, viewed in the light most favorable to the verdict, the evidence presented at trial was sufficient as a matter of constitutional due process to authorize a rational jury to find beyond

7

a reasonable doubt that Dozier was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

In addition, Dozier argues that the evidence is legally insufficient as a matter of state law to sustain his convictions because the only evidence that he was an active participant in the crimes was the testimony of Johnson, an accomplice. We disagree. Although the testimony of an accomplice, without more, is insufficient to sustain a conviction, it may be sufficient if corroborated by other evidence. And "[s]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged." Coley v. State, 305 Ga. 658, 660 (2) (827 SE2d 241) (2019) (citation and punctuation omitted). That said, the corroborating evidence must be independent of the accomplice testimony and must directly connect the defendant with the crime or lead to the inference that he is guilty. Id. Here, there was sufficient evidence to corroborate Johnson's testimony, including the gunshot residue on Dozier's

8

hands, his admission in the call to his father that he had fired a weapon at the scene, and his DNA and thumbprint on the Kel-Tec .380-caliber handgun to which several shell casings from the scene were linked.

Judgment affirmed. All the Justices concur.

DECIDED DECEMBER 23, 2019.

Murder. Gwinnett Superior Court. Before Judge T. Davis.

*Brown & Gill, Angela B. Dillon*, for appellant.

*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Samuel R. d'Entremont, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.