317 Ga. 433
FINAL COPY

S23A0654. PAULDO v. THE STATE.

LaGrua, Justice.

Appellant Raekwon Pauldo was convicted of malice murder in connection with the shooting death of Jacquel Smith.[1] On appeal, Pauldo contends that his trial counsel provided constitutionally ineffective assistance by (1) failing to adequately prepare the defense of accident, (2) failing to limit testimony concerning the registration of Pauldo's gun, and (3) failing to adequately inform him of the State's plea offer. For the reasons that follow, these claims

---

[1] The shooting occurred on October 29, 2017. On December 19, 2017, a Laurens County grand jury indicted Pauldo for malice murder, felony murder, and three counts of aggravated assault. Prior to trial, the trial court suppressed portions of Pauldo's custodial statement to police, and we reversed that ruling. See *State v. Pauldo*, 309 Ga. 130 (844 SE2d 829) (2020). Pauldo was tried in February 2022, and the jury found him guilty of all counts. The trial court sentenced Pauldo to serve life in prison without the possibility of parole on the malice murder count and vacated or merged the remaining counts. Pauldo filed a timely motion for new trial, which was amended through new counsel. After holding an evidentiary hearing, the trial court denied the motion for new trial on January 18, 2023. Pauldo filed a timely notice of appeal, and his case was docketed to this Court's April 2023 term and submitted for a decision on the briefs.

fail, and we affirm Pauldo's conviction.

The evidence presented at trial showed that on October 29, 2017, Pauldo, Smith, and Zuri Brown were watching football in the living room of Brown's house when Brown's mother, who was in the next room, heard "a loud gun pop." Brown's mother ran into the room and saw Smith sitting on the couch, gasping for air. Pauldo told Brown's mother that Smith killed himself. Brown drove Smith and Pauldo to the hospital, where Smith died from the gunshot wound.

The surveillance video from the front of the emergency room showed Brown park his car in front of the emergency room, get out of the car, and yell for help. Hospital personnel removed Smith from the back seat of the car, placed him on a gurney, and wheeled him into the hospital. The video showed that Pauldo was not inside Brown's car when it arrived at the hospital; the video showed Pauldo running up to Brown's car several minutes after Brown parked and the police had arrived. After watching this surveillance video, police obtained another surveillance video from the hospital's parking lot, which showed that, around the time Brown was parking his car in

2

front of the emergency room, Pauldo was running from the back of the parking lot toward Brown's parked car. Police used these videos to recover a Taurus 9mm semi-automatic handgun in a drainage ditch in the area from which Pauldo was seen running, and ballistics testing confirmed that the recovered gun fired the bullet that was retrieved from Smith's body.

Brown and Pauldo both gave statements to police. Brown stated he was in the bathroom when the shooting occurred, but that he saw Pauldo with a gun, heard Pauldo and Smith arguing, and heard Pauldo say, "I'll shoot your a**." Brown also admitted that he let Pauldo out of the car prior to arriving at the hospital so that Pauldo could dispose of the gun.

Pauldo initially told police that he had his back turned to Smith when Pauldo "heard a gunshot go off." But he eventually admitted that he and Smith got into an argument, Smith put his hand in Pauldo's face, and Pauldo reacted by hitting Smith with Pauldo's gun, which "went off." Throughout Pauldo's interview, he denied intentionally shooting Smith. Regarding the gun, Pauldo stated it

3

was registered to him and he hid the gun out of fear prior to arriving at the hospital.

At the beginning of Pauldo's interview, which was about five hours after the shooting, he consented to a gunshot residue test, but it was not performed until about 20 minutes later. During this 20-minute period, one officer noticed that "[Pauldo] was continuously wiping his hands on his pants, with each other, he even took a tissue, at one point, and wiped his hands with the tissue." Another officer took the tissue from Pauldo because she knew that "gunshot residue . . . c[ould] be wiped off of the hands." Pauldo's gunshot residue test was negative.[2]

At trial, Pauldo's defense theory was that there was no evidence that Pauldo pulled the trigger and shot Smith and that the evidence of a recall on Pauldo's gun for having a faulty safety showed that the gun likely discharged without him pulling the trigger. The State's firearms expert testified that, based on her testing, the gun

_____

[2] Police collected the tissue that Pauldo used to wipe his hands, but it was not tested for gunshot residue.

was functioning properly, but she noted that the cartridge case remained inside the gun even though "the typical cycle of fire for a semi-automatic [gun] is that [the] cartridge case would be extracted from t[he] chamber and [ejected] out of the [gun]." The firearms expert referred to this scenario as "a failure to extract and eject" and said this could be caused by different variables, including how the gun was held, which could "imped[e] the slide from cycling correctly," or by defective ammunition that is "out of spec," such that "it's not generating enough pressure for that slide to cycle." The firearms expert acknowledged that there was "a class action lawsuit against [the gun's manufacturer]" alleging that "[w]hen the safety [was] engaged on the [gun]" and the gun "was dropped, [it] would discharge." The firearms expert stated that she did not conduct "an abuse test" on the gun to check for a faulty safety or to determine whether the gun would fire "if the gun was hit on someone's head" because "[a]n abuse test ha[d] to be specifically requested," and one was not requested.

Detective Brawner Ashley was asked whether he "check[ed]

5

the registration of [Pauldo's] gun," and Detective Ashley responded: "Yes, we did. We . . . checked it through [the Georgia Crime Information Center] to see whether or not it was stolen. And, also, Sergeant [Lee] Washburn did a trace on the weapon itself." Detective Ashley did not elaborate on whether the gun was reported as stolen, but he said that Sergeant Washburn had the results of the trace. When Sergeant Washburn testified, he said the trace showed that the gun was registered to someone other than Pauldo. But Sergeant Washburn went on to say that if the registered owner "had sold it to somebody and not put out a trace[ ] for it," the trace would "not show who it was sold to after he purchased it."

The medical examiner testified that the bullet that killed Smith entered his body through the middle of his chin, exited underneath his chin, and re-entered in his chest. The bullet had a downward trajectory from the chin, and Smith had "soot and stippling" on his chin, meaning his skin was "three to six inches from the end of the barrel" of the gun when it was fired. The medical examiner also noted an abrasion on the left side of Smith's forehead.

6

According to the medical examiner, the abrasion contained "several parallel lines" and was "very consistent with" having been hit with Pauldo's gun.

1. Pauldo contends his trial counsel provided constitutionally ineffective assistance by (a) failing to adequately prepare the defense of accident because counsel failed to present a firearms expert, (b) failing to adequately prepare the defense of accident in that counsel failed to introduce "certified documentation" of the gun's recall, (c) failing to limit testimony concerning the registration of Pauldo's gun, and (d) failing to adequately inform Pauldo of the State's plea offer.

To prevail on these claims, Pauldo must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Pauldo must show that trial counsel performed his duties in an objectively unreasonable

7

way, considering all the circumstances and in the light of prevailing professional norms. See id. Establishing deficient performance

> is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [the appellant] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Park v. State*, 314 Ga. 733, 740-741 (2) (879 SE2d 400) (2022) (citation and punctuation omitted). To establish prejudice, Pauldo must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different. See *Bates*, 313 Ga. at 62 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "And, this burden is a heavy one." Id. at 62-63 (2) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine

8

the other prong." *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023) (citation and punctuation omitted).

(a) Pauldo contends his trial counsel provided constitutionally ineffective assistance by failing to adequately prepare the defense of accident because counsel failed to present a firearms expert.[3] Assuming without deciding that counsel was deficient, we agree with the trial court that Pauldo failed to establish prejudice.

It is well established that a defendant fails to establish prejudice under *Strickland* when he merely contends that trial counsel was deficient for failing to present an expert, without also presenting evidence at the motion-for-new-trial hearing about what

[3] Regarding the defense of accident, we note that Pauldo requested that the trial court give Georgia Pattern Jury Instructions § 3.00.00: Affirmative Defense; Definition; Burden of Proof and § 3.50.10: Accident. The trial court, citing *Kellam v. State*, 298 Ga. 520 (783 SE2d 117) (2016), denied this request, concluding "accident is just not applicable here." See id. at 523 (2) (holding that in order to claim the defense of accident, "it must be established a defendant acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby." (citation and punctuation omitted)), overruled on other grounds by *Mitchell v. State*, 317 Ga. 109, 114 (2) (891 SE2d 915) (2023). See also *Allaben v. State*, 315 Ga. 789, 793 (1) n.3 (885 SE2d 1) (2023). On appeal, Pauldo does not raise any contentions regarding the failure to instruct on affirmative defense and accident.

the potential expert would have testified to at trial. See, e.g., *Coley v. State*, 305 Ga. 658, 665 (6) (b) (827 SE2d 241) (2019) (concluding that the appellant failed to show prejudice when he "presented no evidence [at the motion-for-new-trial hearing] that he has had the firearm or the magazine tested"); *Howard v. State*, 298 Ga. 396, 399 (2) (782 SE2d 255) (2016) (concluding that the appellant failed to show prejudice when he "did not have the blood tested post-trial" and thus "has not shown that [blood testing] would have been favorable to his defense"); *Geiger v. State*, 295 Ga. 648, 653-654 (5) (b) (763 SE2d 453) (2014) (concluding that the appellant failed to show prejudice when he "did not present any evidence at the motion[-]for[-]new[-]trial hearing that additional testing of the shell casing would have produced evidence that would have been favorable to him at his trial"). This is because "mere speculation about what the evidence would have shown had it actually been obtained does not satisfy the requirement of showing prejudice." *Coley*, 305 Ga. at 666 (6) (b) (citation and punctuation omitted).

Here, Pauldo failed to present any evidence at the motion-for-

new-trial hearing about what evidence could have been elicited from a potential firearms expert that would have been different from what the State's firearms expert testified to at trial. Pauldo therefore has not shown that a reasonable probability exists that the result of the trial would have been different had this potential evidence — whatever it may have been — been presented at trial. See *Coley*, 305 Ga. at 665 (6) (b). As a result, this claim of ineffective assistance fails.

(b) Pauldo contends his trial counsel provided constitutionally ineffective assistance by failing to adequately prepare the defense of accident in that counsel failed to introduce "certified documentation" of the gun's recall. We conclude that counsel was not deficient.

Here, trial counsel elicited testimony from the State's firearms expert that Pauldo's gun was subject to a manufacturer's recall due to a faulty design with the safety and that an "abuse test" was not conducted. Trial counsel also cross-examined the expert on the difference between a "check function test" — which was conducted and resulted in a finding that the gun's safety was working as

11

expected — and an abuse test, which was not conducted. In closing argument, trial counsel argued the State had not carried its burden to prove Pauldo's guilt in part because no "abuse test" was conducted on the gun even though it had a known manufacturer's defect causing it to discharge without a trigger pull.

"[A]n attorney's decisions as to what witnesses and other evidence to present are a matter of trial strategy," *Evans v. State*, 315 Ga. 607, 611 (2) (c) (884 SE2d 334) (2023) (citation and punctuation omitted), and in the absence of evidence to the contrary, counsel's decisions are presumed to be strategic. See *Holland v. State*, 314 Ga. 181, 190 (3) (875 SE2d 800) (2022). A strategic decision "will not form the basis for an ineffectiveness claim unless it is so unreasonable that no competent attorney would have made that decision under the circumstances." *Davis v. State*, 315 Ga. 252, 262 (4) (a) (882 SE2d 210) (2022) (citation and punctuation omitted).

Pauldo contends his trial counsel performed deficiently by failing to introduce "certified documentation" surrounding the gun's recall because Pauldo's "sole defense" was that the gun discharged

12

without a trigger pull. But counsel's strategic decision to elicit testimony from the State's firearms expert to explain the lawsuit concerning the gun, the manufacturer's recall of the gun, and the gun's faulty safety that led to the lawsuit and recall — instead of introducing certified documents supporting this testimony — was not so unreasonable that no competent attorney would have made that decision under the circumstances. Moreover, Pauldo did not introduce any evidence at the motion-for-new-trial hearing as to what the "certified documentation" of the gun's recall would have proven, so he has not shown that trial counsel performed deficiently by deciding not to introduce that evidence at trial and to instead elicit testimony about the recall from the State's firearms expert. See *Bates*, 313 Ga. at 67 (2) (d) (concluding trial counsel's strategy to use the State's expert to explain PTSD and how it affected the defendant's conduct was reasonable). Accordingly, we conclude Pauldo failed to demonstrate that his counsel performed deficiently, and this claim fails.

(c) Pauldo appears to contend his trial counsel provided

13

constitutionally ineffective assistance by failing to either "move to exclude any testimony concerning the registry of the [gun]" or present evidence that Pauldo purchased the gun. At the motion-for-new-trial hearing, trial counsel testified that, prior to trial, she was under the impression that Pauldo was the gun's registered owner. Trial counsel said that, after Sergeant Washburn testified at trial, a member of Pauldo's family gave her a bill of sale, evidencing the gun's sale from the registered owner to Pauldo. Trial counsel further testified that the registered owner "was not being cooperative as far as just coming to court" and she did not seek to subpoena him to testify at trial. Pauldo contends that the evidence concerning the gun's registration was "bad character" evidence that prejudiced him at trial.

Assuming without deciding that Pauldo's counsel was deficient, we conclude that Pauldo has not established prejudice because he has not shown a reasonable probability of a better result had his trial counsel either moved to exclude any testimony concerning the registry of the gun or presented evidence that Pauldo

14

purchased the gun. See *Hughes v. State*, 312 Ga. 149, 154 (2) (a) (861 SE2d 94) (2021) (weighing the strength of the evidence of the defendant's guilt against the evidence that trial counsel failed to elicit at trial).

The testimony about the registry of the gun, particularly in the absence of evidence that Pauldo purchased the gun, could have led the jury to infer that Pauldo stole the gun because he wrongly stated that it was registered to him. But this inference is weakened by the fact that there was no direct evidence that the gun was stolen and Sergeant Washburn acknowledged that the registered owner could "ha[ve] sold it to somebody and not put out a trace[ ] for it." Although the prosecutor mentioned during closing argument that Pauldo "lied" about the gun being registered to him, this was not emphasized. Rather, the prosecutor identified this as one of Pauldo's "lies"; these "lies" included Pauldo telling Brown's mother that Smith killed himself and Pauldo initially telling police that he never saw a gun and did not know how Smith was shot. Thus, any prejudice from the prosecutor mentioning this "lie" in closing

15

argument was reduced because it was mentioned in the context of much more incriminating statements made by Pauldo.

And the evidence against Pauldo was very strong. During Pauldo's interview with police, he confessed to hitting Smith in the face with a loaded gun, claiming it "went off," and Pauldo's confession was corroborated by the medical examiner's testimony concerning the abrasion on Smith's head. Additionally, Brown heard Pauldo threaten to shoot Smith right before Smith was shot. Moreover, immediately after the shooting, Pauldo told Brown's mother that Smith killed himself, and Pauldo hid the gun on his way to the hospital. See *Davenport v. State*, 309 Ga. 385, 389 (2) (846 SE2d 83) (2020) (concluding that the evidence "though circumstantial, was very strong" because the forensic evidence indicated that the defendant shot the victim, attempted to cover up the crime, and then fabricated a story to the police that the victim killed herself).

We conclude that, given the very strong evidence of Pauldo's guilt, he has not shown that evidence that the gun was registered to

16

someone else had any impact on the outcome of his trial. Thus, Pauldo has failed to demonstrate that there is a reasonable probability that, but for his counsel's alleged deficiency, the result of the trial would have been different, and this claim fails. See *Davenport*, 309 Ga. at 389 (2) (concluding the defendant could not demonstrate prejudice due to very strong evidence of guilt).

(d) Pauldo contends his trial counsel provided constitutionally ineffective assistance by failing to adequately inform him of the State's plea offer of 20 years to serve in prison on the reduced charge of voluntary manslaughter. Assuming without deciding that Pauldo's trial counsel performed deficiently, we conclude that Pauldo has not established prejudice. To prevail on his claim, Pauldo must demonstrate that, but for his counsel's deficient performance, there is a reasonable probability that "he would have accepted the State's plea offer (and that the trial court would have accepted its terms)." *Calhoun v. State*, 308 Ga. 146, 154 (2) (d) (839 SE2d 612) (2020). See also *Lafler v. Cooper*, 566 U.S. 156, 164 (II) (B) (132 SCt 1376, 182 LE2d 398) (2012).

17

Pauldo argues that "a reasonable person in Pauldo[']s place would have accepted the plea had" counsel properly advised Pauldo of the plea offer, but that is not the standard for establishing prejudice "where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 U.S. at 163 (II) (A). See id. at 164 (II) (B) (holding that a defendant must show "that *the defendant* would have accepted the plea" (emphasis supplied)). See also *Washington v. Attorney Gen. of the State of Alabama*, 75 F4th 1164, 1173 (III) (A) (11th Cir. 2023) (holding that, in determining whether "the petitioner would have accepted a plea offer," courts should consider "protestations of innocence . . . along with other facts, such as why the petitioner chose to reject other offers and the discussions that petitioner had with his counsel about those offers").

In the order denying the motion for new trial, the trial court found that "[Pauldo] NEVER testified that **he would have accepted the plea**" and concluded that Pauldo failed to establish prejudice. (Emphasis in original.) The trial court's factual finding is

18

supported by the record and was not clearly erroneous. See *Bonner v. State*, 314 Ga. 472, 474 (1) (877 SE2d 588) (2022) (explaining that this Court accepts a trial court's factual findings unless they are clearly erroneous). And there was no other evidence presented that showed Pauldo would have accepted the plea offer.

Thus, Pauldo has failed to show that, but for his counsel's deficient performance, there is a reasonable probability that he would have accepted the State's plea offer. Accordingly, this claim fails. See *Yarn v. State*, 305 Ga. 421, 427 (4) (826 SE2d 1) (2019) (concluding the defendant "has not satisfied the *Lafler* test for prejudice because he has failed to show that he would have accepted the plea offer but for his counsel's allegedly deficient advice").

2. Lastly, we consider the cumulative effect of prejudice resulting from any assumed deficiencies in trial counsel's performance at trial. See *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum.") (citation and

punctuation omitted), overruled on other grounds, *State v. Lane*, 308 Ga. 10, 23 (1) (838 SE2d 808) (2020). Pauldo makes no argument that any prejudice stemming from the assumed deficiencies in subdivisions 1 (a) and (c) can be combined with any prejudice from the assumed deficiency in subdivision 1 (d). He also makes no argument as to how he was prejudiced by any cumulative effect of the assumed deficiencies in subdivisions 1 (a), (c), and (d). In sum, Pauldo has failed to carry his burden of establishing cumulative error. See *Reed v. State*, 314 Ga. 534, 554 (8) (c) n.18 (878 SE2d 217) (2022).

*Judgment affirmed. All the Justices concur.*

Decided October 11, 2023.

Murder. Laurens Superior Court. Before Judge Green.

*Spencer L. Fredericks*, for appellant.

*L. Craig Fraser, District Attorney, Cheryl B. Hightower, Robert B. Faircloth, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.