NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 9, 2022

S22A0737. WALKER v. THE STATE.

ELLINGTON, Justice.

A Richmond County jury found Shaun Walker guilty of malice murder and other crimes in connection with the shooting death of Antonio Jerome Ferguson.[1] On appeal, Walker contends that the

[1] The murder occurred on September 3, 2017, in Richmond County. On October 31, 2017, a Richmond County grand jury returned an indictment accusing Walker of malice murder (Count 1), felony murder based on the predicate felony of aggravated assault (Count 2), criminal attempt to commit armed robbery (Count 3), possession of a firearm during the commission of a crime (Count 4), terroristic threats (Count 5), and possession of a firearm by a convicted felon (Count 6). Following a trial held January 28 to 31, 2020, the jury returned verdicts of guilty on Counts 1, 2, 4, 5, and 6. The trial court thereafter sentenced Walker to serve life in prison without parole for malice murder, concurrent five-year prison terms for terroristic threats and possession of a firearm by a convicted felon, and a consecutive five-year prison term for possession of a firearm during the commission of a crime. The trial court noted that the felony murder count "merged as a matter of law." However, because the jury found Walker guilty of malice murder, the felony murder count actually was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (5) (434 SE2d 479) (1993), and the aggravated assault that formed the predicate for the felony murder count merged into the malice murder conviction. Walker timely filed a motion for new trial, which was amended on September 28, 2021. The trial court denied the motion on January 26, 2022, and Walker filed a notice of appeal from that order on February 11,

evidence was insufficient to support his convictions. Because the evidence was sufficient to establish Walker's guilt beyond a reasonable doubt as to each of his convictions, we discern no error in the trial court's ruling.

1. *Facts.* Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. In early September 2017, Walker and Ferguson were living together in a house that Ferguson had rented. Walker admitted that he and Ferguson had been arguing with each other over money. Ferguson's landlord testified that Ferguson, who was behind on the rent, had gone with him to several automated teller machines on September 2, 2017, the day before the shooting, to withdraw cash with which to pay his rent. The landlord testified that Walker accompanied Ferguson to each of the machines that they visited.

That night, Walker and Ferguson went to a bar in Augusta, where they got into a heated argument. When Walker became

2022. This appeal was docketed to the April 2022 term of court and submitted for a decision on the briefs.

belligerent, bar employees and an off-duty police officer working security for the bar told Walker to leave. The officer's body-camera video recording shows Walker threatening Ferguson by making a hand gesture that simulated Walker shooting Ferguson with a gun. In this video, Walker said: "F**k with me, [I'm going to] kill your a**[.]" The police arrested Walker shortly after the incident because Walker returned to the bar after being ordered to leave.

On September 3, after being released from jail, Walker went to a grocery store where Ferguson and another man were shopping. Ferguson's sister was also in the store and witnessed Walker talking to her brother. The sister testified that, as Ferguson paid for his groceries in cash, Walker stood nearby, watching. Moments later, Walker left the store. The sister watched as Ferguson and his friend left together, heading toward the parking lot with their groceries.

Shortly after he was seen at the grocery store, Walker confronted Ferguson on the sidewalk of a residential street not far from their home. He pointed a gun at Ferguson, snatched Ferguson's cell phone from his hand, and demanded money. A ten-year-old

eyewitness to these events testified that Ferguson responded by saying: "[T]his is not your money, you can't get my money." The child testified that the gunman shot Ferguson several times and then fled in the direction of a nearby school. Immediately after the shooting, the child described the gunman and his clothing, a white tank top and black pants, to the police. On cross-examination, the child testified that, although he heard the shooting and saw the gunman running away, he did not observe the shooting. Later in the trial, however, the prosecutor again called the child to testify, and the child testified that he had in fact seen the gunman threatening and then shooting Ferguson. He also testified that gunman told him immediately after the shooting: "[D]on't tell nobody." Another witness testified that, although she did not witness the shooting, she had seen two young men walking together before the shooting. When she heard the gun shots, she ran outside and saw one man on the ground, one man running, and a "little boy . . . out there . . . hollering."

Investigators recovered time-stamped surveillance video

4

recordings taken from cameras mounted on the exterior of a high school near the scene of the shooting. The recordings showed Walker, who was wearing black pants and a white tank top, running in front of the school. He ran by a row of bushes beneath which the murder weapon was later recovered. After comparing the school surveillance video with the police body-camera video showing Walker and Ferguson arguing at the bar the night before, the police determined that Walker was a likely suspect in Ferguson's murder.

After his arrest, Walker gave the police a recorded statement. In his statement, Walker recounted his many grievances with Ferguson. He claimed that Ferguson constantly threatened him with a gun and a machete. He said that Ferguson was often drunk and that Ferguson had taken advantage of him and stolen his money. Walker eventually admitted killing Ferguson, but claimed that he did so in self-defense. As he stood up and held his wrists together, indicating that the police should handcuff him, Walker said: "I did his a**. I'm done. You can take me in. I got a pistol and did his a**. It was self-defense and that's the f*****g truth." After

this admission, Walker explained that Ferguson was trying to take advantage of him: "He [was] trying to max out my card. I told him to spend eighty dollars. I had one [hundred and] thirty left."

After giving this statement, Walker led the police to an area by the high school where he had discarded the murder weapon, a .45-caliber pistol, in dense bushes. Forensic testing established that the pistol was the weapon that had ejected the five .45-caliber shell casings recovered from the scene of the shooting. During a search of Walker's home, police found a box of .45-caliber ammunition. The police also recovered the clothes that Walker had been wearing on the day of the shooting from the home of one of Walker's friends. The friend testified that Walker appeared at his home on the afternoon of the shooting and asked to use his washing machine. The clothes, which had been washed when the police recovered them, matched the clothes Walker was wearing in the school surveillance video recording. The defense and the State stipulated that Ferguson had died as a result of gunshot wounds to the torso, right forearm, and legs. After the jury returned its guilty verdicts on Counts 1 through

5 of the indictment, the State, in the second part of this bifurcated trial, submitted into evidence certified copies of Walker's 2005 felony conviction for burglary. Thereafter, the jury returned a guilty verdict on Count 6, possession of a firearm by a convicted felon.

2. *Analysis.* In his sole claim of error, Walker contends that the trial court erred in denying his motion for a new trial because the evidence recounted above was insufficient to prove his guilt beyond a reasonable doubt of the crimes charged. In support of this claim, Walker argues that his "confession" was not sufficiently corroborated by evidence proving that he was, in fact, the shooter.[2] He also argues that the evidence against him was entirely circumstantial and that the State failed to disprove all other reasonable theories.[3] For the following reasons, we disagree.

(a) First, Walker argues that his confession of guilt was not

---

[2] See OCGA § 24-8-823 ("All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.").

[3] See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

properly corroborated by other evidence as required by OCGA § 24-8-823, which provides in pertinent part that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." But Walker's admissions do not constitute a confession and were not described as such by the trial court.[4] As we have explained,

> a mere incriminating statement is made where the accused, though admitting to damaging circumstances, nonetheless attempts to deny responsibility for the crime charged by putting forward exculpatory or legally justifying facts. Thus, [a] statement which includes facts or circumstances which show excuse or justification is not a confession of guilt even if it admits the main fact[.]

(Citations omitted.) *Thomas v. State*, 308 Ga. 26, 30 (2) (b) (838 SE2d 801) (2020). Walker's statement to police asserted self-defense, so it was merely an incriminating statement and corroboration pursuant to OCGA § 24-8-823 was not required. See id.

(b) Second, contrary to Walker's assertion, the evidence offered to prove his crimes was not entirely circumstantial. Therefore we need not address whether the proved facts "exclude[d] every other

---

[4] The trial court did not give the jury an instruction pertaining to "confessions." Rather, the trial court gave the jury several charges pertaining to Walker's "out of court statements."

reasonable hypothesis save that of [Walker's] guilt" of the crimes charged. OCGA § 24-14-6. See also *Jackson v. State*, 311 Ga. 626, 630 (2) (859 SE2d 626) (2021). ("[I]if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply to a sufficiency analysis.") (citations omitted). In fact, ample direct as well as circumstantial evidence supported each of his convictions. The police officer's body camera video recording from the bar provided direct evidence of Walker making terroristic threats to shoot and kill Ferguson.[5] Walker's own admissions constitute direct evidence that he murdered Ferguson by shooting him and that he possessed a pistol during the commission of that crime.[6] And the State submitted certified records establishing that

---

[5] A video-recording of events alleged to depict a crime constitutes direct evidence of the crime. See *McCray v. State*, 301 Ga. 241, 244 (1) (799 SE2d 206) (2017) ("Direct evidence is that which is consistent with either the proposed conclusion or its opposite; circumstantial evidence is that which is consistent with both the proposed conclusion and its opposite.") (citation, punctuation and emphasis omitted). See also *Gonzalez v. State*, 359 Ga. App. 147, 150-151 (1) (c) (857 SE2d 88) (2021) (Surveillance video constituted direct evidence that the defendant touched the clothing around his genital area in a manner consistent with masturbation while in close proximity to and watching a child.).

[6] Testimony about Walker's admissions is direct, not circumstantial, evidence of his guilt. See *Harper v. State*, 298 Ga. 158, 161 (780 SE2d 308) (2015); *Evans v. State*, 288 Ga. 571, 575-576 (707 SE2d 353) (2011).

9

Walker was a convicted felon when he possessed the murder weapon.

(c) Finally, to the extent that Walker argues that the evidence was insufficient as a matter of constitutional due process to authorize a rational trier of fact to find beyond a reasonable doubt that Walker was guilty of each of the four crimes of which he was convicted, we disagree.[7] In evaluating whether the evidence at trial was sufficient as a matter of due process under the Fourteenth Amendment of the United States Constitution, this Court considers whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). In performing this evaluation, we view the evidence in the light most favorable to the verdicts, leaving "to the jury the resolution of conflicts or

---

[7] The trial court sentenced Walker for malice murder, OCGA § 16-5-1 (a); possession of a firearm during the commission of a crime, OCGA § 16-11-106; making terroristic threats, OCGA § 16-11-37; and possession of a firearm by a convicted felon, OCGA § 16-11-131. In his appellate brief, Walker did not argue how the State's evidence was insufficient as to the various elements of the crimes of which he was convicted; rather, Walker asserted generally that the evidence was insufficient to identify him as the man who shot Ferguson.

10

inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Rodriguez v. State,* 309 Ga. 542, 546 (1) (847 SE2d 303) (2020) (citation and punctuation omitted).

In addition to the direct evidence set forth in Division 2 (b) above, Walker's conviction for murder was supported by witness testimony, surveillance and body-camera video recordings, ballistic evidence, and evidence of Walker's motive and efforts to destroy evidence. The child who witnessed the shooting heard Walker and Ferguson arguing about money right before Walker shot Ferguson. Although the child said on cross-examination that he did not see the shooting, when called by the State to testify again, he confirmed that he had witnessed the shooting and that Walker had told him not to say anything. The child's credibility was for the jury to determine. Further, another witness – one who heard the shooting and immediately thereafter saw a man fleeing from the scene – testified that she saw the 10-year-old eyewitness standing in the street near the victim, shouting. Moments after the shooting, a nearby high

11

school's video surveillance camera recorded Walker running by the school building. Police officers recognized Walker from that video as the man seen threatening Ferguson the night before in an officer's body camera video recording. The jury could infer from officer testimony, as well as the surveillance and body camera video recordings introduced in evidence, that Walker was the man with whom Ferguson had argued the night before the shooting. Walker also went to a friend's house right after the shooting to wash the clothes he was wearing during the shooting. The jury could infer from this act that Walker intended to remove evidence of blood or gunpowder residue from his clothing. And, after Walker admitted shooting Ferguson, he showed the police where he had discarded the murder weapon. The police also found .45-caliber ammunition in Walker's home. For these reasons, we see no error in the trial court's ruling that the evidence was sufficient beyond a reasonable doubt to support each of Walker's convictions. Therefore, we affirm.

*Judgment affirmed. All the Justices concur.*