NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 7, 2023

S23A0061.  ALLABEN v. THE STATE.

ELLINGTON, Justice.

This is the third appearance of this case before this Court. Twice previously, Dennis Ronald Allaben appealed from a conviction for malice murder arising from the strangulation death of his wife, Maureen. On each appeal, we reversed the conviction and remanded the case, and a retrial ensued. See *Allaben v. State,* 294 Ga. 315 (751 SE2d 802) (2013) (*Allaben I*); *Allaben v. State*, 299 Ga. 253 (787 SE2d 711) (2016) (*Allaben II*). After Allaben's third trial was held in December 2016, a DeKalb County jury found him guilty of malice murder, and he again appeals.[1] Allaben contends that the evidence

---

[1] The murder occurred on or about January 3, 2010. The procedural history of this case, extending from the initial indictment of Allaben on March 31, 2010 through his second appeal, is recounted in *Allaben I*, 294 Ga. at 315 n.1, and *Allaben II*, 299 Ga. at 253 n.1. Allaben's second and third trials proceeded under a May 2014 re-indictment by a DeKalb County grand jury for

was insufficient to support his conviction for murder and that the State failed to prove venue as required by OCGA § 17-2-2. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on Monday, January 4, 2010, Maureen's co-workers became concerned because she did not come to work that day and neither she nor Allaben answered the co-workers' phone calls. At lunchtime, the co-workers went to the Allabens' DeKalb County house and entered it, but found no one there. Maureen's minivan was in the garage, but Allaben's pickup truck was not at the house.

Around 4:30 p.m. on the same day in Virginia, Allaben's sister-

malice murder and felony murder predicated on aggravated assault. At his third trial, Allaben was found guilty on both counts. On December 15, 2016, Allaben was sentenced to life in prison without parole for malice murder, and the felony murder count was vacated by operation of law. Allaben filed a timely motion for a new trial, which he amended on October 1 and October 10, 2018, and on November 14, 2019. After a hearing on November 19, 2019, the trial court denied the amended motion for a new trial on February 19, 2020, except for Allaben's claim that his sentence of life without parole was improper. On October 27, 2021, the trial court conducted a resentencing hearing and entered a new sentence of life in prison with the possibility of parole for malice murder. Allaben filed a timely notice of appeal, which he amended on February 1, 2022. The case was docketed in this Court to the term beginning in December 2022 and submitted for a decision on the briefs.

in-law Jill returned from work to her home to find Allaben there with his and Maureen's two children. After Jill ordered pizza for the children, she and Allaben talked privately. Allaben told Jill that "there had been an accident"; that Maureen had "gotten into some crazy things," including making recordings of him that were of a sexual nature, taking the recordings to others, and poisoning him; that he "wanted to know the truth" and "wanted her to tell the truth"; that he was "going to tie her up and use a cloth with ether on it to put her to sleep so that when she woke up, he would tell her the truth about what she was doing"; that he "put a cloth with ether over her mouth and the cloth went too far down"; that it "went down her throat"; that "she died, that he had killed her"; that "her body was in the back of the truck"; that he had not called the police or an attorney; that the children "know that I killed their mother"; that he had stolen a license plate and removed his phone battery to avoid being tracked; and that he had thought he was being followed and about to be arrested, so he told the children during their drive from Georgia that "he strangled her." Jill told Allaben to leave, kept the

3

children with her, and called the local police. The responding Virginia police officer, after speaking with Jill and the children, contacted law enforcement in Georgia, and DeKalb County police officers performed an investigation at the Allaben home.

Allaben returned to Georgia on January 5 and drove to the Clayton County home of a former co-worker, who talked with him for approximately two hours and then accompanied him to surrender to a neighbor who was a City of Morrow police officer. A Clayton County officer who responded to a call confirmed that a human body was in Allaben's pickup truck, wrapped in a blue moving blanket that was held in place by duct tape. The Clayton County Police Department secured the truck until releasing it to a DeKalb County detective. That detective obtained a search warrant, stayed with the truck until it was delivered to the DeKalb County Medical Examiner's Office, and explained that the body was hidden by a number of heavy items. Another DeKalb County detective testified that officers and crime scene technicians again went to the Allaben house to investigate a homicide, that it was located in

4

DeKalb County, and that they found, among other things, a bucket with different types of tape and a blue moving blanket of the same type that was wrapped around the body.

The medical examiner observed that the victim's body was partially clothed in a black t-shirt and underwear, and her knees were "bent" and "tucked up" consistent with a sleeping position. She had many petechial hemorrhages on her face and eyes, a large hemorrhage underneath her conjunctiva (described by the medical examiner as "the white part of the eye . . . , the outer white"), and bruises on her jawbone and neck, including a deep hemorrhage on her thyroid eminence ("called by most people the Adam's apple"). Based on his examination of those injuries, the medical examiner determined that the cause of death was strangulation, likely by means of a "sleeper hold," which is a chokehold technique that police officers would use as a "submission hold" but that most law enforcement agencies have forbidden "because a significant number of people died" as a result of its use. Regarding how long it would take for strangulation to cause death, the medical examiner testified

5

that it would depend on certain variables but could take one to two minutes or more for the victim to lose consciousness and then another few minutes for death to occur. According to the medical examiner, a sleeper hold is not "likely" to cause serious bodily injury, but has the "potential" to cause such injury. There was alcohol, Benadryl, and ether in the victim's system, which did not cause her death, but which would cause at least some degree of incapacitation in most people. The medical examiner found no signs of a struggle and no evidence of a rag in the victim's throat.

1. Allaben contends that the State failed to present sufficient evidence to prove him guilty of malice murder beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[2] He concedes that "[i]t is undisputed that Allaben

---

[2] Both times this case was before us previously, we reviewed the evidence and found it to be constitutionally sufficient. See *Allaben I*, 294 Ga. at 315-316 (1); *Allaben II*, 299 Ga. at 254-255 (1). At Allaben's third trial, the State was required to present evidence of his guilt again, and because Allaben raised sufficiency of the evidence, we are required to review the evidence from the third trial, although the differences between that evidence and the evidence presented at the first and second trials are very slight. Cf. *Welbon v. State*, 304 Ga. 729, 730 (1) (822 SE2d 277) (2018) ("[W]hen an appellate court determines that the evidence is legally sufficient to support a jury's guilty verdict, but the

6

caused Maureen's death," but argues that he did not intend to kill Maureen. Allaben bases this argument on his statements to his sister-in-law that there had been an accident and that he wanted his wife to go to sleep and then wake up, and on the medical examiner's testimony that the "sleeper" chokehold likely used on her only had the "potential" to cause serious bodily injury.

In evaluating the sufficiency of the evidence at trial as a matter of federal due process under *Jackson*, 443 U. S. at 319, "this Court considers whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 314 Ga. 390, 394 (2) (c) (877 SE2d 197) (2022). "In performing this evaluation, we view the evidence in the light most favorable to the verdicts, leaving to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." Id. (citation and punctuation omitted).

---

case is remanded for reconsideration of a different issue, the sufficiency of the evidence may not be raised again in a second appeal *unless* a new trial was held.") (emphasis supplied).

7

A person commits the crime of malice murder "when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

> Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

OCGA § 16-5-1 (b). In other words, malice may be inferred from evidence of conduct that demonstrates "such a reckless disregard for human life as to show an abandoned and malignant heart." *Dozier v. State*, 307 Ga. 583, 585 (837 SE2d 294) (2019) (citation and punctuation omitted); *Jones v. State*, 303 Ga. 496, 499 (II) (813 SE2d 360) (2018) (citation and punctuation omitted). "The issue of whether a killing is intentional and malicious is for the jury to determine from all the facts and circumstances." *Jones v. State*, 314 Ga. 400, 407 (877 SE2d 232) (2022) (citation and punctuation omitted).

Allaben's arguments that the evidence showed nothing more

8

than an accident and that he only wanted his wife to go to sleep and wake up do not prevail in this sufficiency analysis because the jury was authorized to discredit Allaben's self-serving assertion that Maureen's death was an "accident"[3] and indeed was not required to believe any portion of Allaben's statements to his sister-in-law that amounted to a denial of an intent to kill his wife. See *White v. State*, 303 Ga. 533, 535 (1) (813 SE2d 592) (2018) ("Although [the defendant] testified at trial that he did not intend to kill [his wife], the jury was free to conclude otherwise."). Conversely, the jury was authorized to credit Allaben's admissions that he planned to use a cloth with ether over his wife's mouth to render her unconscious, that he strangled or otherwise suffocated her, and that he was responsible for her ensuing death. See *Bush v. State*, 267 Ga. 877,

---

[3] OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." For a defendant to claim accident, there must be evidence that he "acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby." *Kellam v. State*, 298 Ga. 520, 523 (2) (783 SE2d 117) (2016) (citation and punctuation omitted).

878 (485 SE2d 466) (1997) ("the jury was entitled to disbelieve the self-serving part of [the defendant's] statement and to believe the [inculpatory] part").

Moreover, the medical examiner's testimony shows that Maureen was strangled by use of a chokehold for a long enough time to kill her. Allaben's argument regarding the medical examiner's testimony is virtually the same as his argument in *Allaben II* that was based on the medical examiner's testimony in Allaben's second trial that "a sleeper hold, generally speaking, is unlikely to cause death." *Allaben II*, 299 Ga. at 254 (1). Although the testimony in the record now before us was not identical to the testimony at Allaben's previous trials, it was very similar. After careful review of the evidence, we reject Allaben's argument about the chokehold for the same reasons that we rejected his similar argument in *Allaben II*. The medical examiner's testimony on which Allaben relies—that the "sleeper" chokehold that likely was used on Maureen only had the "potential" to cause serious bodily injury—

did not prevent the jury from concluding that [Allaben]

utilized [a sleeper hold] with intent to effectuate his wife's death. Moreover, the jury heard evidence that the victim: was only partially clothed; showed no signs of having defended herself; and was affected by substances that could have rendered her incapacitated prior to her death. The jury also heard testimony that [Allaben] utilized a sleeper hold long enough to kill the victim and leave innumerable hemorrhages on her face.

*Allaben II*, 299 Ga. 255 (1). See also *Wynn v. State*, 313 Ga. 827, 836 (3) (874 SE2d 42) (2022) ("the force involved in strangling a person to the point of unconsciousness" and tying the person's hands behind his back is "simply inconsistent with the lack of intent to kill") (citation and punctuation omitted).

Indeed, the jury was authorized to infer from Allaben's admissions and the medical examiner's testimony that Maureen's death was not an "accident," that Allaben's actions demonstrated a reckless disregard for human life that showed an abandoned and malignant heart, and, therefore, that Allaben was acting with malicious intent. See *Jones*, 314 Ga. at 406 (2) (holding that the evidence was sufficient for the jury to reject the defendant's assertion of accident and find him guilty of malice murder);

11

*Morrison v. State*, 300 Ga. 426, 427 (1) (796 SE2d 293) (2017)

("especially considering that [the defendant's] own self-serving statement was the only evidence that [the victim's] death was accidental, and considering as well that his hypothesis of accidental death was not consistent with the forensic evidence, we conclude that the evidence authorized the jury to find beyond a reasonable doubt that [the defendant] was guilty of [malice] murder"). We conclude that the evidence presented at trial and summarized above, when viewed in the light most favorable to the verdict, was constitutionally sufficient to authorize a rational jury to find beyond a reasonable doubt that Allaben was guilty of malice murder. See *Jackson*, 443 U. S. at 319; *White*, 303 Ga. at 535 (1) (evidence of malicious intent was sufficient where it showed that the defendant had struck his wife with a hammer multiple times); *Sheffield v. State*, 281 Ga. 33, 35 (2) (635 SE2d 776) (2006) (proof that the defendant manually strangled the victim was ample evidence of intent to take the victim's life).

2. Allaben also contends that the State failed to prove that

venue was proper in DeKalb County because the State failed to question its witnesses about when and where Maureen died and because her body was discovered in Clayton County. We disagree.

With respect to venue generally, "all criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county." Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. See also OCGA § 17-2-2 (a) ("Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law."). Also, "[c]riminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c). If, however, "it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred." Id. If a "body is discovered in this state and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered."

13

Id. See also *Polke v. State*, 315 Ga. 33, 37 (3) (880 SE2d 153) (2022); *Hernandez v. State*, 304 Ga. 895, 898 (2) (823 SE2d 272) (2019). And, OCGA § 17-2-2 (h) provides that, "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." "[T]he provisions of subsection (h) may be used to determine venue in homicide cases." *Pike v. State*, 302 Ga. 795, 797 (809 SE2d 756) (2018).

With respect to proof of venue, "[v]enue is a jurisdictional fact that the State must prove beyond a reasonable doubt and can do so by direct or circumstantial evidence. Determining whether venue has been established is an issue soundly within the province of the jury." *Polke*, 315 Ga. at 37 (3) (citation and punctuation omitted). See also *Worthen v. State*, 304 Ga. 862, 871 (3) (e), n.6 (823 SE2d 291) (2019) ("[L]ike any other fact, venue may be proved by circumstantial evidence, and it is enough if the fact of venue is properly inferable from all the evidence.") (citation and punctuation

14

omitted). Specifically, even if "[n]o witness was ever directly asked to identify the county in which the cause of death was inflicted, or in which the events surrounding the victim's death occurred," the evidence nevertheless could have been sufficient for the jury, "under an appropriate instruction from the trial court, [to] find beyond a reasonable doubt that venue was properly laid."[4] *Raines v. State*, 304 Ga. 582, 584 (1) (820 SE2d 679) (2018).

> On appeal, this Court reviews a challenge to the sufficiency of the venue evidence just like we review a challenge to the evidence of guilt: we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

*Worthen*, 304 Ga. at 865 (3) (a) (citation and punctuation omitted).

The circumstantial evidence in this case that venue was proper in DeKalb County includes the following. When Maureen did not go

---

[4] In this case, the trial court properly and thoroughly charged the jury on the law in OCGA § 17-2-2 (a), (c), and (h), and further instructed the jury that venue "must be proved by the State beyond a reasonable doubt as to each alleged crime just as any element of the offenses" and "be proved by direct or circumstantial evidence or both."

to work on the morning of January 4, her co-workers went to the Allabens' marital residence in DeKalb County and found Maureen's minivan there. While driving from Georgia to Virginia, Allaben admitted to his children that he had already killed Maureen, and after arriving in Virginia, he admitted to his sister-in-law that his wife's body was in the truck that he had driven from Georgia. Maureen was not dressed for leaving home but was only partially clothed. A blue moving blanket found at the Allabens' DeKalb County house was of the same kind that was wrapped around Maureen's body. Given this evidence, the jury could reasonably infer that Maureen was strangled to death in the DeKalb County house, wrapped in a moving blanket kept in the house, carried to Allaben's truck, and then driven away. Moreover, until Allaben returned to Georgia with his wife's body and went to his former co-worker's home in Clayton County, there was absolutely no evidence that Clayton County had any connection whatsoever to his wife's murder. In addition, several law enforcement officers and the medical examiner testified that they were employed by DeKalb County when

they worked on the case, even though the victim's body was first made available to law enforcement in Clayton County.

Viewed in the light most favorable to the verdict, the circumstantial evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that the murder of Maureen "might have been committed" in DeKalb County. OCGA § 17-2-2 (h). See also, e.g., *Johnson v. State*, 302 Ga. 774, 784 (5) (809 SE2d 769) (2018) ("Additional evidence of venue was provided by several witnesses who testified that they were employed by the Decatur County Sheriff's Office when they worked on the case, where nothing in the record suggested that any such official had multi-jurisdictional authority."); *Hinton v. State*, 280 Ga. 811, 814 (1) (631 SE2d 365) (2006) (evidence related to venue, including that the defendant and the victim were together in DeKalb County before the murder and that the defendant apparently admitted that he had taken the victim at a gas station in DeKalb County where her car was found abandoned, "was sufficient to show beyond a reasonable doubt that the murder might have been committed in DeKalb

17

County”).

*Judgment affirmed. All the Justices concur.*