**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 18, 2025

S25A1453.  TAYLOR v. THE STATE.

WARREN, Presiding Justice.

In November 2021, Antonio Taylor was convicted of malice murder related to the death of his girlfriend, Aisha Dixon.  He appeals his conviction, arguing that the evidence was not sufficient to support the malice murder conviction or to prove venue; that OCGA § 17-2-2(h) and the corresponding jury instruction given at his trial violate OCGA § 17-2-2(a) and the United States Constitution; and that his sentence of life in prison without parole violates the United States and Georgia Constitutions.  Because the evidence was sufficient to support Taylor's conviction and to prove that venue was proper in DeKalb County; OCGA § 17-2-2(h) and its corresponding jury instruction do not violate OCGA § 17-2-2(a) or the United States Constitution; and the factual premise of Taylor's

sentencing argument is erroneous, we affirm.[1]

1. The evidence presented at trial showed the following. In April 2019, Taylor and Dixon, who had been dating for about nine months, were living with Taylor's boss, Shannon Hurt, in her apartment in DeKalb County. Three of Dixon's children, including 12-year-old A.D., also lived with them. On the morning of April 28, Hurt told Dixon that Dixon, Taylor, and the children had to move out that day. When Taylor, who had been out of town, returned later in the day, Hurt gave him the same directive to move out. Taylor became "very angry" and went into the bedroom where he and Dixon had been staying. Dixon was lying naked on the floor of the bedroom "deeply intoxicated." Hurt heard Taylor "cursing" in the bedroom, saying "he shouldn't have to deal with this." According to A.D., who

---

[1] Dixon was killed in April 2019. In July 2019, a DeKalb County grand jury indicted Taylor for malice murder, two counts of felony murder, two counts of aggravated assault, and one count of aggravated battery. At a jury trial in in November 2021, the jury found Taylor guilty on all counts. Taylor was sentenced to life in prison without parole for malice murder. All other counts were vacated or merged. Taylor timely filed a motion for new trial in November 2021 and amended it with new counsel in April 2025. In May 2025, the trial court denied Taylor's motion. Taylor filed a timely notice of appeal. The appeal was docketed to this Court's August 2025 term and submitted for a decision on the briefs.

was also in the bedroom, Taylor "started beating on [Dixon]," hitting her "on her back" "over and over," while yelling at her to put her clothes on. A.D. also saw Taylor "pulling [Dixon's] hair and choking her" and "kicking and stomping on her," to the point where "she was [a]sleep." In a later interview, Taylor admitted that he choked Dixon at Hurt's apartment, although he said that he did not choke her "hard" enough to kill her.

After A.D. helped Dixon put her clothes on, Taylor carried Dixon "on his shoulder" out to Taylor's car and "dropped her" so she was "laying down on the ground." Taylor's car would not start, so he called his daughter, Teara Ziegler, to pick them up. When Ziegler arrived, Taylor put Dixon in Ziegler's car, and Ziegler drove Taylor, Dixon, and the three children to her apartment in Fulton County.[2] According to A.D., Dixon "slept the whole ride."

When they arrived, A.D. saw Taylor "dr[a]g [Dixon] up the

---

[2] Although A.D. testified that Taylor put Dixon in the car, Ziegler testified that Dixon "got up off the ground to walk to the car" on her own, although she was "staggering as if she was drunk" and Taylor had to "grab[] her arm."

stairs [to Ziegler's apartment] by her hair," "slamming her head …

on the concrete stairs." Taylor then carried Dixon into the

apartment and left her lying on the floor of the living room. In the

apartment, A.D. saw that Dixon was "bleeding" on the "side of her

head" and Taylor used a rag to try to stop the bleeding. Later

investigation showed a small amount of blood on the stairs and on a

rag in the apartment.

According to A.D., Ziegler, and Ziegler's son, who was also in

the apartment, Dixon did not say anything or move when she was

lying on the living room floor.[3] After a short time, Taylor carried

Dixon into the bathroom and gave her a bath. Taylor later told

investigators that Dixon was talking to him before the bath and was

"moaning" in the bathtub, but became unresponsive after he got her

out of the bath. Ziegler, however, testified that she did not hear any

talking from the bathroom while Dixon and Taylor were inside.

_____

[3] Although A.D. and Ziegler's son testified at trial that they did not see Dixon move while she was on the floor, when they were interviewed by investigators after the incident, they said that they had seen Dixon "wiggling" or "squirming."

Taylor then carried Dixon out of the bathroom and placed her on the living room floor. Taylor said, "I don't think she's breathing." Ziegler checked Dixon for a pulse and could not find one. She drove Taylor and Dixon to a hospital, where Taylor carried Dixon inside.

Dixon was declared dead at the hospital. According to the emergency room doctor who examined Dixon, Dixon had "most likely … been dead for a long period," possibly one hour or more, before being brought to the hospital.[4] Taylor was taken into custody at the hospital and arrested after he was interviewed by investigators. He told hospital staff and investigators that Dixon was injured when she fell on the stairs. According to the emergency room doctor, however, that story "was not at all consistent with what we were seeing on our exam," including the "bruising over the neck" that "was really prominent" and "a sign of strangulation."

The medical examiner who performed Dixon's autopsy testified at trial as follows. The number of injuries Dixon suffered could not

---

[4] Ziegler testified that the time between her picking Dixon and Taylor up at Hurt's apartment and dropping them off at the hospital was about two or three hours.

have been caused by a single impact. Dixon had 17 external injuries to her head; at least 3 internal injuries indicating strangulation; 19 injuries to her torso; and 8 internal injuries in her torso with "multiple parts," including "large lacerations" on her liver and the "transect[ion]" of her adrenal gland. These internal injuries would have required a "great amount of force" and were consistent with someone kicking, punching, or stomping on Dixon. The internal injuries, especially the damage to the liver, caused internal bleeding, resulting in one third of Dixon's blood pooling in her abdominal cavity. Someone receiving all of the injuries seen on Dixon would become "weaker and weaker," losing "function" and "cognition," while "bleeding into their abdomen"; essentially she would be "bleeding to death." Based on all of Dixon's internal injuries, as well as the manual strangulation, her death "probably" would have occurred within minutes of receiving the injuries. As to the wound A.D. noticed on Dixon's forehead after Taylor "slamm[ed] [Dixon's] head" on the stairs, the amount of blood found on the stairs and rag at Ziegler's apartment was less than the medical examiner would

6

have expected to see if Dixon had been alive and had "a heartbeat, blood pressure" at the time that injury was inflicted, but the amount of blood might have matched a scenario in which Dixon was already "dying" when she received the injury. Dixon's cause of death was "blunt force trauma to the torso associated with manual strangulation."

The jury found Taylor guilty of malice murder and related crimes for killing Dixon, and he was sentenced to serve life in prison without the possibility of parole.

2. Taylor contends that the evidence presented at trial was not sufficient to support his conviction for malice murder as a matter of due process under *Jackson v. Virginia*, 443 US 307 (1979), and he argues that the evidence did not support the jury's finding beyond a reasonable doubt that venue was proper in DeKalb County. Both of these arguments fail.

(a) When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 US at 319. Under this review, we leave to the fact finder "any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence." *Rashad v. State*, 318 Ga. 199, 206 (2024). See also OCGA § 24-14-8 (providing that the testimony of a single witness is generally sufficient to establish a fact).

As detailed above, the evidence presented at trial included A.D.'s testimony that Taylor "hit[]," "kick[ed] and stomp[ed] on," and "chok[ed]" Dixon until "she was [a]sleep," and Taylor's own statement that he choked Dixon. And although Taylor asserted that Dixon was injured by falling on the stairs, the emergency room doctor and medical examiner testified that Dixon's multiple injuries, including injuries consistent with being choked and internal injuries requiring a "great amount of force," could not have been caused by a single fall. Thus, the evidence presented at trial was sufficient to support Taylor's malice murder conviction. See *Rashad*, 318 Ga. at

8

207 (holding that the evidence was sufficient as a matter of constitutional due process to support the appellant's conviction for malice murder where doctors testified that the victim's injuries were caused by "non-accidental, significant force generated by multiple blows" and the evidence indicated that the victim received those injuries when only the appellant and another child were with the victim); *Mann v. State*, 307 Ga. 696, 698–99 (2020) (holding that the evidence was sufficient as a matter of constitutional due process to support the appellant's malice murder conviction where doctors testified that the victim's injury was not consistent with a fall, which was the explanation given by the appellant, and the appellant admitted to "squeezing" and "hitting" the victim).

(b) Taylor next argues that the evidence did not support the jury's finding that venue was proper in DeKalb County.

"Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law." OCGA § 17-2-2(a). "Criminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted."

OCGA § 17-2-2(c). Under Georgia law, "venue is a jurisdictional fact that the State must prove beyond a reasonable doubt and can do so by direct or circumstantial evidence." *Allaben v. State*, 315 Ga. 789, 795 (2023) (cleaned up).

> On appeal, this Court reviews a challenge to the sufficiency of the venue evidence just like we review a challenge to the evidence of guilt: we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

Id. at 796 (cleaned up). See also id. ("Determining whether venue has been established is an issue soundly within the province of the jury.").

The evidence presented at trial showed that Taylor was killed by "blunt force trauma to the torso" and "strangulation,"[5] and A.D.'s testimony and Taylor's statement were evidence that Taylor inflicted those injuries—including by hitting Dixon "on her back"

---

[5] Consistent with this evidence, Taylor was indicted for malice murder for causing the death of Dixon, with malice aforethought, "by causing blunt force trauma and strangling" her.

10

and choking her—at Hurt's apartment in DeKalb County. Moreover, although there was evidence that Taylor "slamm[ed] [Dixon]'s head" on the stairs in Fulton County and her forehead was injured, there was no evidence that this injury caused or contributed to her death. To the contrary, there was strong evidence that she was already dead or near death due to internal bleeding and the effects of strangulation by the time she was brought to the apartment in Fulton County.[6] Thus, the evidence was sufficient to support the jury's finding that venue was proper in DeKalb County. See id. (holding that the evidence was sufficient to prove venue in DeKalb County where circumstantial evidence indicated that the victim was killed in her DeKalb County house, including the victim's state of undress and a moving blanket found in the house that matched the blanket her body was wrapped in); *Polke v. State*, 315

---

[6] This evidence included testimony from multiple witness that she did not speak or move on her own in Fulton County, the medical examiner's testimony that the internal bleeding in her torso and strangulation probably killed Dixon within minutes, and the medical examiner's testimony that the small amount of bleeding from Dixon's forehead wound indicated that she was not alive or was near death at the time she received it.

Ga. 33, 38 (2022) (concluding that the evidence was sufficient to prove venue because, although the defendant initially claimed the shooting happened in another county, "the jury was authorized to reject her self-serving statement as a lie").

3. At trial, the following instruction was given to the jury as part of the overall instructions on venue:[7]

> In a prosecution in any case in which it cannot be determined in what county the crime was committed, venue is proper and may be provided in any county in which the evidence showed beyond a reasonable doubt that it might have been committed.

This instruction tracks OCGA § 17-2-2(h), which says: "If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have

---

[7] The jury was also instructed on the general principles of venue discussed in Division 2(b) above, including that "[c]riminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted" and venue "is a jurisdictional fact that must be proved by the State beyond a reasonable doubt."

been committed."[8]

Taylor argues that because OCGA § 17-2-2(h) and the corresponding instruction allow a jury to find venue where the crime "might have been committed," they violate the requirement in OCGA § 17-2-2(a) that "[c]riminal actions shall be tried in the county where the crime was committed" and the requirements in the United States Constitution that a trial "shall be held in the State where the said crimes shall have been committed," US Const. Art. III, § 2, cl. 3, and that a criminal defendant has the right to a trial by a "jury of the State and district wherein the crime shall have been committed," US Const. Amend. VI.[9]

---

[8] Given the strong evidence that Taylor inflicted Dixon's cause of death in DeKalb County, it is not likely that the jury would have concluded that this was a "case in which it cannot be determined in what county the crime was committed." But in any event, Taylor does not argue that the instruction based on OCGA § 17-2-2(h) was improper because it was not warranted by the evidence.

[9] Although, as seen above, there are some slight differences in the wording of OCGA § 17-2-2(h) and the related instruction given at trial, Taylor does not argue that any of these differences were material or that the instruction may be unconstitutional even if the statute is not. Thus, we will treat OCGA § 17-2-2(h) and the related instruction the same for purposes of this argument.

13

But this Court has already rejected the argument that OCGA § 17-2-2(h) conflicts with Georgia's constitutional requirement that a criminal trial "shall be tried in the county where the crime was committed," Ga. Const. of 1983, Art. VI, Sec. I, Par. VI. See *Bundren v. State*, 247 Ga. 180, 180–81 (1981) (holding that the materially similar former version of OCGA § 17-2-2(h) "does not violate the mandate" that "a criminal trial be held in the county in which the crime was committed" because "[i]t merely provides a mechanism by which that mandate can be carried out when the place in which the crime is committed cannot be determined with certainty"); *Hinton v. State*, 280 Ga. 811, 814–15 (2006) (rejecting the contention that OCGA § 17-2-2(h) "conflicts with the requirement that a criminal trial must be conducted in the county in which the crime was committed" because "[t]hat contention is controlled adversely" by *Bundren*). Although Taylor relies on OCGA § 17-2-2(a), rather than the Georgia Constitution, the relevant language here—requiring that a case "shall be tried in the county where the crime was committed"—is the same in the Georgia Constitution and OCGA §

14

17-2-2(a). Thus, Taylor's argument—which does not acknowledge this well-settled precedent—fails.

As to Taylor's claims based on the United States Constitution, even assuming that the Sixth Amendment's venue requirement applies to the states,[10] we conclude that because OCGA § 17-2-2(h) and the corresponding jury instruction do not violate Georgia's constitutional requirement that a case "shall be tried in the county where the crime was committed," they also do not violate the similar federal constitutional requirements. See US Const. Art. III, § 2, cl. 3; US Const. Amend. VI. In the context of this argument, Taylor offers no reason to conclude that the federal constitutional provisions he cites impose stricter venue requirements than

---

[10] Although the United States Supreme Court has not decided whether the Fourteenth Amendment incorporates the Sixth Amendment's venue requirement such that the venue requirement applies to the states, "a substantial majority of the [lower federal and state] courts ruling on the issue have flatly rejected the contention that the Fourteenth Amendment incorporates the Sixth Amendment's requirement that jurors be from the district of the offense, with the boundaries of the district previously established by law." LaFave, § 2.6(b) Guarantees not yet incorporated, 1 Crim. Proc. § 2.6(b) (4th ed.).

Georgia's constitutional requirement, and we see none.[11]  His argument therefore fails.  See *Hinton*, 280 Ga. at 814–15.[12]

4.  Finally, Taylor asserts that his sentence of life in prison without the possibility of parole violates the Georgia and United States Constitutions because it violates "the due process proportionality rule" and "the separation of powers doctrine."

(a)  In support of his first contention—that his sentence violates "the due process proportionality rule"—the only argument Taylor makes is that "[l]ife without parole for an armed robbery in which there were no physical injuries certainly is out of proportion given also the defendant's age (32 at time of crime) and the facts of

---

[11] We note that in other contexts, there are important differences between the state and federal venue requirements.  For example, unlike Georgia law, "federal law requires that the prosecution prove proper venue by only a preponderance of the evidence."  *Rouse v. State*, 296 Ga. 213, 229 n.2 (2014) (Nahmias, J., dissenting).  See also *United States v. De La Cruz Suarez*, 601 F3d 1202, 1217 (11th Cir. 2010).  Compare *Allaben*, 315 Ga. at 795 (explaining that under Georgia law, "venue is a jurisdictional fact that the State must prove beyond a reasonable doubt and can do so by direct or circumstantial evidence").

[12] Taylor also asserts that the instruction based on OCGA § 17-2-2(h) given at his trial contradicts Georgia Criminal Pattern Jury Instruction 1.51.10.  But that is incorrect; the record shows that the instruction given was directly quoted from Pattern Jury Instruction 1.51.10.

this case." It is perplexing that Taylor makes this argument—and only this argument—in support of this contention in both his initial appellate brief and in his reply brief to this Court because Taylor was not alleged to have committed, let alone indicted for, armed robbery in this case; he was indicted for and convicted of malice murder. And this is not a case with "no physical injuries"—to the contrary, the victim suffered numerous severe physical injuries—and evidence presented at trial established that Taylor was 53 (not 32) years old at the time of the crime.

Because the factual predicate of the only argument Taylor offers in support of this contention is incorrect, this contention fails. See, e.g., *Walker v. State*, 311 Ga. 719, 726 (2021) (rejecting a claim of ineffective assistance of counsel because the basis of the argument—that counsel failed to raise certain objections—was incorrect).

(b) In support of his second contention—that his sentence violates "the separation of powers doctrine"—Taylor offers no argument at all. Instead, he repeats (almost verbatim) the

17

argument he made in support of his first contention. Thus, this enumeration is deemed abandoned. See Supreme Court Rule 22 ("Any enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned."); *Campbell v. State*, 320 Ga. 333, 349 n.17 (2024) (holding that any argument about the admissibility of statements mentioned by the appellant was abandoned because the appellant "ma[d]e no argument as to why, or even if" the statements were inadmissible).

*Judgment affirmed. All the Justices concur.*

18