321 Ga. 57
FINAL COPY

S25A0408. GUYTON v. THE STATE.

McMillian, Justice.

Appellant V'Daul Devontae Malik Guyton was convicted of malice murder and other charges in connection with the shooting death of Taurus Thurmond.[1] On appeal, Guyton argues that the evidence was insufficient to support his malice murder conviction and that his trial counsel rendered constitutionally ineffective assistance by failing to object to: (a) the State repeatedly showing

---

[1] Thurmond died on May 11, 2021. On May 27, 2021, a Douglas County grand jury indicted Guyton for malice murder (Count 1), three counts of felony murder (Counts 2-4), armed robbery (Count 5), aggravated assault (Count 6), aggravated battery (Count 7), hijacking a motor vehicle (Count 8), theft by taking (Count 9), tampering with the operation of an electronic monitoring device (Count 10), and possession of a firearm during the commission of a felony (Count 11). At a trial from February 27 through March 2, 2023, the jury found Guyton guilty of all counts. On March 7, 2023, the trial court sentenced Guyton to serve life in prison without the possibility of parole for malice murder, plus various consecutive sentences for Counts 5 and 8-11; the other counts were vacated by operation of law or merged for sentencing purposes.

Guyton filed a timely motion for new trial on March 9, 2023, which was amended by new counsel on June 5, 2024. Following a hearing on August 15, 2024, the trial court denied Guyton's motion for new trial, as amended, on September 3, 2024. Guyton filed a timely notice of appeal on September 23, 2024, and the case was docketed to the term of this Court beginning in December 2024 and thereafter submitted for a decision on the briefs.

crime-scene photographs of Thurmond's body without warning and (b) certain testimony regarding Guyton's criminal past. For the reasons that follow, we affirm.

The evidence presented at trial showed the following. Thurmond had a reputation for helping previously incarcerated people. According to his roommate, who had been previously incarcerated and helped by Thurmond, "[Thurmond] acquired a lot of friends in custody. Cause he — he been incarcerated himself and he done met a lot of people in and out of jail," and "he help[ed] a lot of people that's incarcerated." In late April 2021, Thurmond bailed Guyton out of jail, the two began a romantic relationship, and Thurmond allowed Guyton to live with him and share his room.

During their short relationship, the two took a trip together to Florida to visit family and friends of Thurmond, and during that trip, a family friend who was conversing with Guyton heard him mutter that "he was going to kill [Thurmond]." About a week later, on the evening of May 10, 2021, Thurmond told his sister over Facetime that he "felt used," was "tired of . . . being taken advantage

2

of," and "was going to end the relationship with [Guyton]." Thurmond's sister testified that she could see Guyton within earshot of Thurmond during their call.

The next morning, Thurmond's roommate left the home because the roommate learned that he had to go re-register as a sex offender at the Douglas County Sheriff's Office.[2] When the roommate returned home, he noticed that Thurmond's vehicle was gone, found Thurmond's body in bed with blood on the sheets, and called 911. No one else was at home. Law enforcement responded and discovered that Thurmond was dead with three gunshot wounds to his head; bullets were recovered from Thurmond's pillow and his body.

Officers discovered that Guyton was supposed to be wearing an ankle monitor and that his monitor had been cut off at 10:43 a.m. on the day that Thurmond was killed. Based on GPS data retrieved

_____

[2] In the course of this testimony, the roommate also testified that he had first spoken to Guyton about two weeks before when Guyton had telephoned from jail and that he first met Guyton soon after when Guyton, having been bailed out by Thurmond, moved in.

from Guyton's ankle monitor, it was at the home he shared with Thurmond the morning of May 11, but left the home shortly after 10:00 a.m., transmitting again from a nearby Walmart at 10:36 a.m. Officers obtained surveillance footage from the Walmart, which showed Guyton there buying scissors. Thurmond's vehicle was equipped with a tracking system, and law enforcement found it in Mississippi in Guyton's possession later that day. Guyton was also found in possession of scissors and the Walmart receipt for them; Thurmond's bank and credit cards; over $5,000 in cash, along with ATM receipts from that day; and Thurmond's gun, a Taurus 9mm.

A firearms examiner testified at trial that Thurmond's firearm, which was found in Guyton's possession, fired the bullets recovered from the crime scene. The DNA of Thurmond, Guyton, and an unknown third person was also discovered on the firearm.

1.  Guyton contends that the evidence presented at trial was insufficient to support that he shot Thurmond with malice.[3]

---

[3] Because Guyton only argues on appeal that the evidence was insufficient to support his malice murder conviction, we do not address the

Specifically, he argues that evidence that Thurmond shared his room with Guyton, introduced Guyton to friends and family members, and invited Guyton on an out-of-town trip showed that Guyton and Thurmond had a close, loving, and devoted relationship, not that Guyton had any malice toward Thurmond. We disagree.

When this Court evaluates the constitutional sufficiency of the evidence, "we review whether the evidence presented at trial, when viewed in the light most favorable to the jury's verdicts, enabled the jury to find the defendant guilty beyond a reasonable doubt of the crimes of which [he] was convicted." *Fitts v. State*, 312 Ga. 134, 141 (3) (859 SE2d 79) (2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Muse v. State*, 316 Ga. 639, 647 (2) (889 SE2d 885) (2023) (citation and

---

sufficiency of the evidence of his other convictions. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020) (ending practice of sua sponte considering sufficiency of the evidence in non-death penalty cases).

punctuation omitted).

OCGA § 16-5-1 provides in relevant part:

> (a) A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.
> (b) Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

"In other words, malice may be inferred from evidence of conduct that demonstrates such a reckless disregard for human life as to show an abandoned and malignant heart." *Allaben v. State*, 315 Ga. 789, 792-93 (1) (885 SE2d 1) (2023) (citation and punctuation omitted). "The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing," *Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019), and "[t]he issue of whether a killing is intentional and malicious is for the jury to determine from all the facts and circumstances," *Allaben*, 315 Ga. at 793 (1) (citation and punctuation omitted).

6

Guyton's argument that the evidence showed only a loving relationship and therefore failed to prove malice ignores that: Guyton threatened to kill Thurmond; Guyton was able to hear Thurmond telling his sister the night before his murder that he planned to end his relationship with Guyton; Thurmond was shot multiple times in the head while sleeping in his bed; Guyton cut off his ankle monitor after Thurmond's murder and was later found in Mississippi; and Guyton was found in possession of Thurmond's vehicle, his firearm (which fired the fatal shots), and his debit and credit cards and thousands in cash along with ATM receipts. This evidence of Guyton's conduct, motives, premeditation, and flight after the murder was more than sufficient to authorize a rational jury to find beyond a reasonable doubt not only that Guyton intended to cause Thurmond's death, but also that he did so with an abandoned and malignant heart, thus satisfying the element of malice. See, e.g., *White v. State*, 303 Ga. 533, 535 (1) (813 SE2d 592) (2018) (where evidence showed that husband threatened to kill his wife if she left him, struck her multiple times in the head with a

hammer, and tried to cover up her death, it was sufficient to prove malice and supported husband's conviction for malice murder); *Walden v. State*, 289 Ga. 845, 846 (1) (717 SE2d 159) (2011) (evidence sufficient to support malice murder conviction where it showed "not only the nature of the gunshot wound, but also [the wife's] motive to harm [her husband], and her prolonged coverup").

2. Guyton also asserts that his trial counsel rendered constitutionally ineffective assistance by failing to object to: (a) the prosecutor repeatedly showing gruesome photos of Thurmond's body without warning, and (b) certain testimony about Guyton's criminal past. For the reasons discussed below, these claims also fail.

To succeed on a claim of ineffective assistance of counsel, Guyton must show both that his counsel's performance was deficient and that such deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish prejudice, Guyton "must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different." *Bates v. State*, 313 Ga.

8

57, 62 (2) (867 SE2d 140) (2022). And if Guyton fails to make a sufficient showing on either the deficiency or the prejudice prong, we need not address the other prong. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022).

(a) *Photos of Thurmond.* During Guyton's trial, the court asked counsel to approach the bench, where the court said the following:

> On multiple occasions the State's Counsel has thrown pictures of the deceased on the screen without warning people in the audience that they are about to do so. These folks are gasping at the pictures, they're jumping up, they're leaving the room.
>
> They are conducting themselves appropriately, they are not yelling, screaming, or hollering. But they're reacting to this. And I am going to instruct the State that the State will warn the members of the audience before it does that again. I am concerned for the emotional well-being of these family members. And I am also concerned about the defendant's right to a fair trial.
>
> Maybe the members of the victim's family could control their reactions if they had a warning. And it's happened numerous times. So I am ordering the State not to do that again.

Guyton argues that the State's "continuous showing of gruesome photos of the decedent without warning, causing members

9

of the audience to emotionally react," was unfairly prejudicial under OCGA § 24-4-403,[4] and violated Guyton's right to a fair trial by an impartial jury under the United States Constitution. Guyton contends therefore, that by failing to object (presumably before the trial court sua sponte instructed the State to provide warnings), trial counsel rendered ineffective assistance.

Pretermitting whether trial counsel performed deficiently in this respect and that, upon objection, the trial court would have instructed the State sooner to provide warnings before showing the otherwise admissible photographs, we conclude that Guyton has not carried his burden of establishing a reasonable probability that had trial counsel objected, the result of Guyton's trial would have been different. The evidence against Guyton—already discussed above—

---

[4] OCGA § 24-4-403 ("Rule 403") provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also *State v. Burns*, 306 Ga. 117, 126 (3) (829 SE2d 367) (2019) ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citation and punctuation omitted).

was strong. Guyton had recently been bailed out of jail by Thurmond, with whom he had a romantic relationship, and Guyton depended on Thurmond for a place to live and other assistance; Guyton had threatened to kill Thurmond shortly before his murder; Thurmond confided to his sister the night before his murder that he was planning on ending his relationship with Guyton—a conversation that took place while Guyton was within earshot; and Guyton cut off his ankle monitor almost immediately after Thurmond's murder and fled to Mississippi, where he was found with Thurmond's bank cards and cash, vehicle, and, most notably, the murder weapon.

Given this strong evidence of Guyton's guilt and the relatively low level of prejudice that may stem from the State showing concededly admissible crime scene photos to the jury repeatedly without warning—a practice that the trial judge addressed sua sponte—Guyton has not established a reasonable probability that but for his counsel's failure to object, the result of his trial would

have been different.[5] See *Stuckey v. State*, 301 Ga. 767, 772 (2) (d), 773 (2) (d) (804 SE2d 76) (2017) ("Pretermitting whether some or all of these photos [of the victim in life] would have been excluded upon objection . . . we conclude that Appellant cannot demonstrate prejudice in light of the overwhelming evidence of his guilt."); *Sullivan v. State*, 301 Ga. 37, 41 (2) (b) (799 SE2d 163) (2017) (holding, where appellant argued counsel was ineffective for failing to object to inflammatory photos of appellant holding a gun, that "[appellant] cannot show that, had counsel objected, the photographs would have been excluded, or that, but for counsel's alleged error, the outcome of his trial would have been different, as the evidence against [appellant] was overwhelming"). Because Guyton has not carried his burden of showing prejudice under *Strickland*, this claim fails.

---

[5] Guyton also states in his appellate brief that trial counsel did not move for a mistrial or request a curative instruction, but he does not argue those points beyond that single mention of them. We conclude that any ineffective assistance of counsel claims based on those grounds, aside from lacking merit, have been abandoned. See Supreme Court Rule 22 (1) ("Any enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned.").

(b) *Guyton's Criminal Past.* During the State's direct examination of the roommate at trial, the following exchange occurred:

Q: . . . When did you first meet the defendant?
A: Uh — let me see, bout two weeks before the murder.
Q: Okay. And did you know of him before he came to live there?
A: Not personally. I just conversed with him over the phone.
Q: Okay. And where was he when you were talking to him on the phone?
A: In the county jail, in I think Dublin.

Later during the State's direct examination of one of the investigators, in explaining how police first identified Guyton as a suspect, the investigator testified that Thurmond "had recently bonded [Guyton] out of jail down in Houston County."

Guyton argues that these mentions of his prior incarcerations were impermissible negative character evidence that biased the jury against him. See OCGA § 24-4-404 (a) ("Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion" except for circumstances not applicable here.). Guyton

13

contends therefore, that by failing to object, trial counsel rendered ineffective assistance.

Again, pretermitting whether trial counsel performed deficiently, Guyton has not carried his burden of establishing a reasonable probability that had his trial counsel objected, the result of Guyton's trial would have been different. The jury was already aware that Guyton had been previously arrested and required to wear an ankle monitor due to Count 10, and evidence of his cutting off the monitor almost immediately after the murder to flee was intrinsic to the murder and properly admitted. See *Jenkins v. State*, 313 Ga. 81, 88 (3) (868 SE2d 205) (2022) (evidence that appellant evaded a police roadblock after crimes was "properly admitted as flight evidence, which is generally intrinsic").

Moreover, other witnesses testified without objection and without argument on appeal that Guyton had been to jail. Thurmond's friend testified that Thurmond told her that he "got [Guyton] out of the jail." And Thurmond's cousin testified that Guyton had mentioned to her that he had been experiencing

14

"temptation after temptation" since getting "out of jail." Later in his testimony, the roommate also mentioned that Thurmond had recently bailed out Guyton. Because the testimony mentioning Guyton's previous incarcerations on which he bases his ineffectiveness claim was largely cumulative of other uncontested evidence about him being previously incarcerated, Guyton has not established a reasonable probability that but for counsel's failure to object to the roommate's testimony about Guyton talking to him on the phone from jail in Dublin or the investigator's testimony about Guyton bonding out of the Houston County jail, the result of his trial would have been different.[6] See *Payne v. State*, 314 Ga. 322, 330 (3) (b) (877 SE2d 202) (2022) ("[B]ecause the [complained-of] testimony was cumulative of other evidence presented at trial and the admission of which [appellant] does not contest, . . . its admission

---

[6] Guyton also again notes, without argument, that his trial counsel never moved for a mistrial or asked for a curative instruction. And he mentions in his appellate brief with no argument that trial counsel gave no strategic reason for not moving to sever Count 10 (tampering with his ankle monitor) from the rest of the counts. We conclude that any ineffective assistance of counsel claims based on those grounds, aside from lacking merit, have been abandoned. See Supreme Court Rule 22 (1).

15

did not prejudice [appellant].”); *Koonce v. State*, 305 Ga. 671, 675 (2) (c) (827 SE2d 633) (2019) (no prejudice from failure to object or move for a mistrial based on certain testimony that was “largely cumulative of other, unobjected-to evidence of the same facts”). Accordingly, Guyton has not carried his burden of showing prejudice under *Strickland*, and this ineffectiveness claim fails as well.[7]

*Judgment affirmed. All the Justices concur.*

---

[7] Guyton does not argue that the deficiencies we have assumed for purposes of analysis and determined to individually lack prejudice cumulatively resulted in prejudice mandating a new trial, and in light of the other evidence in the case, and from our review of the record, we discern no cumulative prejudice warranting reversal. See *Reed v. State*, 314 Ga. 534, 554 (8) n.18 (878 SE2d 217) (2022); see also *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) (“[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.”).

Decided February 18, 2025.

Murder. Douglas Superior Court. Before Judge McClain.

*J. Scott Key, Kayci N. Timmons*, for appellant.

*Dalia Racine, District Attorney, Kelsey Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Grace G. Griffith, Assistant Attorney General*, for appellee.